Graham, Judge,
delivered the opinion of the court:
This suit arises out of a contract between the plaintiff and the Bureau of Ordnance of the War Department, acting with authority in the premises for the defendant, for the manufacture of 132,000 complete rounds of ammunition specially loaded and calibrated in accordance with certain drawings named in the proposal. The initiative in the matter was taken on behalf of the projectile section of the procurement division of the Bureau of Ordnance, by Lieutenant Wright,, acting for said projectile section by authority of that bureau, by requesting a proposal from the plaintiff for the manufacture of said ammunition and requesting to be informed as to the plaintiff’s price and delivery at the earliest possible-, date.
In response to this proposal the plaintiff submitted a detailed bid at a unit price of 91-J cents per round, f. o. b.. *16 plaintiff’s loading plant at Texas, Md. Among the items making up this price of 91| cents was the following:
“Labor of assembling, packing, preparing for shipment and testing, 36 cents.”
The proposal also contained the following:
“It is understood the Government is to furnish all raw materials on this order with the exception of the base primer.
“ It is understood the Government is to supply us box for shipping.”
The matter of these preliminary negotiations, as stated, was in the hands of said Lieutenant Wright. After the bid was received and before the procurement order for the contract had been forwarded from the projectile section to the contract section of the procurement division for the drafting of the contract, Lieutenant Wright was superseded by Lieutenant Andrews. That the bid was accepted is the fair conclusion from the facts found. Without having conducted the original negotiations, Lieutenant Andrews proceeded to prepare the procurement order in accordance with the data which was submitted in the office which appears to have been the request for a bid and plaintiff’s proposal. In reading the said proposal he seems to have gotten no farther than the last item of the unit proposal 91-| cents, namely, “Labor of assembling, packing, preparing for shipment, and testing, 36 cents,” and to have overlooked what followed it in the bid, namely, the statement, supra, “It is understood the Government is to supply box for shipping,” and prepared the order accordingly. This procurement order, dated September 30, 1918, states nothing specifically with regard to boxing or supplying boxing.
In a letter of November 14 to the plaintiff, written by authority of the Chief of Ordnance, Lieutenant Andrews said “the writer when placing this order overlooked the analysis when listed and saw that the cost of labor of assembling, packing, preparing for shipment, and testing was 36 cents, and, therefore, assumed that this included packing boxes.”
The contract was dated the 14th day of October, 1918. It provided that the work should be completed not later than *17 the 9th day of November, 19,18. Owing to delays interposed by the defendant all of the material contracted for was not finally delivered until October 8, 1919, and was not paid for until November 8, 1919, with the exception of the charge for boxes furnished, which is the matter of dispute in this suit.
The plaintiff had the facilities for manufacturing the article contracted for. The Government was to furnish all material except base primers and the plaintiff was to furnish the necessary labor and machinery and deliver the goods packed and boxed, ready for shipment, f. o. b. its plant.
The contract and specifications contained the following-provisions :
“Article VI. Delivery. The articles shall be suitably packed, boxed and marked by the contractor, as directed from time to time by the Chief of Ordnance and shall be delivered by the contractor, f. o. b. cars at the railroad station nearest to the place of manufacture, unless some other place of delivery is herein specified. The contractor shall, at the cost of the United States, ship the articles to any point in the United States designated by the Chief of Ordnance.”
* * * Ifi *
“Article Xb. The conti’actor at its own expense shall suitably pack, box, or make such other shipping provisions as will assure the articles arriving at destination in as good condition as when accepted by the United States at the plant of the contractor.”
“All raw material, with the exception of the base primers, necessary for the due and timely performance of this contract at such times and in such quantities as the Chief of Ordnance may deem requisite, f. o. b. contractor’s plant. Contractor shall pay any demurrage, storage, cartage, or switching charges thereafter accruing.”
After the contract had been prepared in the form in which it was afterwards executed it was sent to the plaintiff, and thereafter a representative of the plaintiff called upon the said Lieutenant Andrews, who had charge of the matter as representative of the projectile section, at his office and pointed out that the bid of 91-J cents simply covered the expense in connection with placing the shells in the boxes *18 and did not cover the expense of furnishing the boxes, which the plaintiff’s proposal stipulated should be borne by the Government.
Whereupon the said Lieutenant Andrews, as he states, in order to save time and enable the Government to “receive the projectiles at the earliest possible moment,” told the plaintiff to approve the contract, with the understanding that a supplemental contract would be drawn making suitable provision for the extra cost of supplying the boxes. Whereupon the plaintiff executed the contract, but no supplemental contract was drawn at that time.
It transpired that the plaintiff had a supply of boxes on hand left over from an unfilled contract for shells as a subcontractor for the Toledo Screw Products Co. under a contract which that company had with the Government.
On November 4 the plaintiff wrote to the packing container section of the procurement division stating that the instant contract would require 2,200 boxes and that he had this number of boxes on hand, which he was willing to supply to the Government at a price named, being the cost to the plaintiff, which letter contained the statement “the terms of this new contract called for these boxes being furnished by the Government.” Thereupon, after consideration of the matter, on November 14, 1918, the said Lieutenant Andrews, by authority of the Chief of Ordnance, wrote to the plaintiff stating that “ your procurement order should not have read that you were to furnish these ” and that the provision of the plaintiff’s bid that the Government should supply the boxes had been overlooked, and suggested that the ammunition be supplied without boxes. It was found that this was not practicable. The plaintiff was asked to submit a bid for furnishing boxes. This it did on the 27th of December, being the same price it had previously submitted. On the 2d of January the said Lieutenant Andrews, acting by authority of the Chief of Ordnance, acknowledged this letter and stated “the Chief of Ordnance directs me to acknowledge your letter of December 27th and to advise you that we are putting through a memorandum to your order whereby you will furnish 2,200 *19 boxes for use in connection with the above order at a price-of $1,117 each.”
Thereafter a supplemental contract was drawn and executed by the parties covering the matter of supply and payment for these boxes, the same being Exhibit C attached to the plaintiff’s petition, wherein it is provided that the plaintiff was to supply 2,200 boxes and be paid therefor at a price of $1,117 each and reciting, among other things, that “ the negotiations for the original contract show that it was the intention of the contractor and the United States that the United States should furnish the packing boxes,” and that—
“ through inadvertence and mutual mistake the original contract in Article Xb provided that the contractor, at its own expense, shall suitably pack, box, or make such other shipping provisions as will assure the articles arriving at destination in as good condition as when accepted by the United States at the plant of the contractor; and that
“ The true intention of the parties to the agreement at the time of making said original contract was that the United States should furnish the packing boxes for such shell, but the contractor should furnish all labor necessary for such .packing and do such packing of said shell in such boxes so furnished by the United States.”
Thereafter the boxes were furnished and the contract performed by the contractor in all other respects to the satisfaction of the Government. The voucher was drawn for payment to the contractor for the boxes furnished at the price agreed upon, properly certified and approved by the Ordnance Department on the 23d day of May, 1919. The amount named in this voucher is the amount sued for in this action.
When this voucher reached the Auditor for the War Department payment was refused.
This action of the auditor was approved by the Comptroller of the Treasury and thereafter the plaintiff brought suit in this court.
It is plain that this is not a case of an ambiguous contract as was suggested in the argument. There is no patent ambiguity. A mere mistake does not constitute a latent ambiguity. The facts establish that it was a case of mutual mistake which justifies this re-formation of the contract in ac *20 cordance with the real intention and understanding of the parties so as to place upon the Government the obligation of furnishing the boxes for this ammunition. Harvey v. United States, 105 U. S. 671, 688, 689. This court has power to do this and give a money judgment for the amount found to be due under the re-formed contract. Cramp v. United States, 239 U. S. 221, 232, 233. Where there has been a mutual mistake the contract should be re-formed. Ackerlind v. United States, 240 U. S. 531, 534, 535.
The contract is therefore re-formed to meet this view of the matter and to place upon the Government the obligation to supply the boxes. Inasmuch as the Government, instead of supplying the boxes, purchased the same from the plaintiff at an agreed price, as to the reasonableness of which there is no question raised, rather than supply the boxes itself and has received and used the same, judgment should be entered for the sum which it was agreed should be paid, which sum is $2,457.40, the amount claimed in the petition, and judgment should be entered in favor of the plaintiff for this amount, and it is so ordered.
Hay, Judge; DowNey, Judge, and Campbell, Chief Justice, concur.