Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff entered into a “ cost-plus ” contract for the construction of airplanes, which were in the nature of experiments. The contract had a provision requiring the contractor to conform to all directions issued and changes in specifications ordered by Colonel Y. E. Clark of the United States Signal Corps. The planes were to be constructed under his direction and in accordance with drawings and specifications approved by him. Changes were ordered, some of them of a substantial nature, and the contractor observed the directions given. There can be no question that the Government had the right to order these changes. There were not only stipulations relative to them, but the making of these experimental planes contemplated alterations in detail. By the terms of the contract, the Government was to pay the cost of direct materials and of direct labor and management and of certain tools and other items of cost, together with a profit equal to 25 per cent on the sum of designated items. The items of cost are set forth in Article III of the contract under twelve separate divisions, and were to be determined on an accrual basis, *212 most of them being payable monthly. After many changes and considerable delays the six airplanes were completed. Payments were made from time to time as the work proceeded, and the differences between the parties may be reduced to two heads — the cost and salvage value of certain plant equipment provided for in subdivisions 5 and 6 of Article III of the contract and the overhead expense contemplated by subdivision 10 of Article III.
Early in the progress of the case there was filed on behalf of the Government a counterclaim for a large amount alleged as overpayment to the plaintiff under the contract and based upon a report of an accountant acting for a division of the Signal Corps. Later an expert accountant was designated by the Bureau of Investigation, Department of Justice, who made another and substantially different report from that made by the former accountant, with the result that instead of furnishing a basis for the counterclaim it shows a liability to plaintiff and practically eliminates the earlier report. Accordingly, it is stated upon the Government’s brief: “ The defendant has abandoned the Kaufman report and in lieu thereof has adopted the Jones report which shows that if any sum is due plaintiff in this case it should not be in excess of $11,263.43.” We need not discuss in detail the accountant’s conclusions. The evidence does not sustain many of them. The findings of fact show the cost of the applicable mechanical and plant equipment and the principal difficulty with this phase of the case arises from the unsatisfactory evidence as to the salvage value with which the Government was to be credited. The Government’s contention that the salvage value should be ascertained under the proviso of subdivision 5 of Article III is not sustained by proof that further contracts of a kind or character contemplated by the provision were awarded plaintiff. It does appear, and the amended petition states, that three contracts involving eight airplanes of an experimental character were awarded by the engineering division of the Air Service, but what the terms of these contracts were, the amounts and time involved, and the parts of the plant to be used in their performance are mt sufficiently shown. We do not *213 think it is necessary to hold that the further contracts were to be awarded by the “ Signal Corps,” but we think the evidence sustains the statement by the Government’s expert accountant that they were to be “ for production in quantity.” We have accordingly found the plant and mechanical cost less salvage at the termination of the contract, and the amounts are stated in Finding XI.
The item of overhead provided for in subdivision 10 of Article III is the basis of much controversy. To a proper understanding of it recourse must be had to the situation of the parties at and before the contract was actually signed. It bears date as of February 19, 1918, but the order in writing for the airplanes was issued two months before this date, and plaintiff had been at work upon them under preliminary negotiations which occurred prior to this written order. In these preliminary negotiations the questions of compensation and the several items of cost were under consideration. The contracting officer, Col. A. C. Downey, makes it quite plain that the “ amount of all other overhead ” at the stated rate for each plane delivered, mentioned in subdivision 10, was an estimate based upon delivery within six months. And the intention of both parties was to limit the stated sum to that estimated period. Manifestly the amount of this overhead could only be an estimate, and because of its uncertainty it was properly enough deemed best to state an amount to cover “ all other ” charges on this account. Upon the basis that 6 months would be sufficient time the amount fixed per plane was agreed upon. The Government had the right to. order changes and under the cost-plus contract the proper items of expense incident to them would be met. When, by reason of these changes or alterations ordered and made, delays were caused and a longer time taken without any fault of the contractor than it was estimated would be taken there is no good reason for imposing the overhead cost for the additional time upon the contractor unless the contract requires it. When it is made to express the real intention of the parties the provision in question becomes clear and in keeping with the general tenor of the contract that the Government would pay the several *214 elements of cost and a profit to the contractor. The contract in the provision stated will be reformed accordingly and the rate of $1,250 per plane limited to six months, while the contractor is allowed an additional sum for the remaining period, about five months, beyond the originally estimated six months’ period.
Plaintiff should have judgment for the amounts mentioned. And it is so ordered.
Graham, Judge; Hat, Judge; and Booth, Judge, concur.
Judge Downey took no part in the consideration of this case.