Whaley, Judge,
delivered the opinion:
This case is brought for the purpose of having a final settlement contract reopened and reformed on the ground of mutual mistake when it was executed. The material facts are not disputed.
The plaintiff, in August, 1918, entered into a contract with the defendant to manufacture a thousand artillery tractors-at a certain fixed price. When the armistice was signed the plaintiff had not completed the manufacture and delivery of all of the tractors. The delivery of more tractors would exceed the peace requirements of the defendant and it was-decided to be in the financial interest of the Government to terminate the contract. Thereafter plaintiff and defendant entered into a settlement contract and the defendant not only agreed to pay the plaintiff for the tractors completed under the original contract, but agreed to make an advance payment of some $300,000 and in addition to pay “ such further sum as may be found by the Secretary of War, or his duly authorized representative or representatives, to be justly due to the contractor as compensation * * *. The contractor, in consideration of the payment immediately to be made hereunder, agrees to accept and abide by the decision of the Secretary of War, or his duly authorized representative or representatives, as to what further sum is justly due to it and the contractor further agrees to accept the additional compensation so allowed as in full satisfaction of any and all claims or demands in law or in equity for itself, its successors, representatives, agents, and assigns growing out of or incident to said original contract, and it hereby expressly agrees that such settlement, when made shall constitute a complete termination of every question or *553 claim, legal or equitable, liquidated or unliquidated, by or on behalf of the contractor pertaining to or growing out of said contract.” (Italics ours.) It was further provided that before the settlement contract could become valid and binding it had to meet with the approval of the ordnance section, War Department Claims Board. The ordnance section, War Department Claims Board, did approve it.
In order to carry out its original contract, the plaintiff had made a subcontract for equipment for the tractors with the Farrell-Cheek Steel Foundry Company and had incurred a liability to this company. After the termination of the original contract between the plaintiff and the defendant the Foundry Company submitted a claim to the plaintiff in the sum of $51,850.41 and the plaintiff included this in its claim against the defendant to the Detroit District Claims Board, as the representative of the Secretary of War.
The auditors of the Detroit District Claims Board made an examination of plaintiff’s claim to arrive at the amount justly due the plaintiff. Certain items of the Foundry Company were disallowed as not belonging under the subcontract and the auditors found the sum of $9,921.68 as the amount justly due by the plaintiff to its subcontractor, the Foundry Company, and the District Claims Board included this amount in the total amount due the plaintiff and recommended to the ordnance section, War Department Claims Board, a settlement on this basis. The ordnance section, War Department Claims Board, approved the action of the District Claims Board and a final settlement contract was prepared by the defendant, submitted to the plaintiff, and was signed by both parties. Article 3 of the final settlement contract provided:
“ The United States shall1 forthwith pay to the contractor the sum of five hundred eleven thousand nine hundred fifty-six and 3Xoo dollars ($511,956.33), in full and final compensation for articles or work delivered, services rendered, and expenditures incurred by the contractor under the original contract and in full satisfaction of any and all claims or demands in law or in equity which the contractor, *554 its successors, representatives, agents, or assigns may have growing out of or incident to said original contract; and said contractor hereby expressly agrees that such settlement when made shall constitute a complete termination of every question or claim, legal or equitable, liquidated or unliqui-dated, by or on behalf of the contractor, pertaining to or growing out of said original contract * *
This final settlement contract was also approved by the ordnance section, War Department Claims Board. Payment was made in February, 1920.
Besides the subcontract with the plaintiff the Farrell-Cheek Steel Foundry Company had certain direct contracts with the Government, and when an examination was made by the auditors of the ordnance section, War Department Claims Board, into the respective items, for the purpose of arriving at a settlement, it was discovered by these auditors that certain items, which had been eliminated from the claim of the Foundry Company to plaintiff and assigned by them to the direct contracts, really did not come under these contracts but belonged rightfully under the plaintiff’s claim. Upon discovery of this error, or mistake, the ordnance section, War Department Claims Board, rescinded its former action on the claim of the Foundry Company against the plaintiff and increased the amount from $9,927.68 to the sum of $21,045.46. In the resolution increasing the amount justly due the Foundry Company, the ordnance section, War Department Claims Board, found that inasmuch as the prime contractor’s claim had been satisfied by the final settlement contract it was necessary to send all the papers to the standing committee, War Department Claims Board, for action in accordance with Claims Board Circular No. 104 outlining the procedure in reopening settlement contracts after payment. The applicable section is set out in Finding VIII and will not be repeated here.
The War Department Claims Board declined to act, claiming lack of jurisdiction where a settlement contract had been “ entered into, signed, and paid,” and remitted the plaintiff to his rights through the auditor or comptroller.
*555 As the representative of the Secretary of War, the War Department Claims Board had power and authority to reopen and reform the final settlement contract and to grant relief from the manifest error. Although possessing the power to act, it had by its own resolution determined as a policy not to reopen settlement contracts after payment. The plaintiff pursued the course authorized by the board and applied to the Auditor for the War Department for an additional allowance by reason of the mistake made by the auditors of the District Claims Board and corrected by the ordnance section, War Department Claims Board. The Auditor for the War Department disallowed the claim and the comptroller subsequently affirmed the auditor’s decision. Of course, the auditor and the comptroller had no authority to reopen a settlement contract, but the War Department Claims Board did have the power and should have taken some affirmative action in the matter. Section C-2 of Circular No. 104 conferred authority on the standing committee to consider such cases after payment, and the standing committee was an adjunct of the War Department Claims Board.
In May, 1923, the plaintiff paid to its subcontractor, Farrell-Cheek Steel Foundry Company, the sum of $21,045.46, being the amount found justly due by the auditors of the War Department after the discovery of the mistake.
The sole question before us is: Under the facts of the case, is such a mutual mistake so clearly made out as to justify this court, in the exercise of its equity powers, to reopen and reform the settlement contract to make it conform to the full intention of the parties? There is no question this court has the power to reform contracts. South Boston Iron Works v. United, States, 34 C. Cls. 114, 200; United States v. Milliken Imprinting Co., 202 U. S. 168.
The facts clearly show a mutual mistake has been made. The plaintiff placed itself in the hands of the Government to ascertain the amounts justly due it and the amount due by it to its subcontractor. Acting under its agreement to accept the amounts found due by the Government representatives, plaintiff signed the agreement and accepted payment in the faith and belief it was correct and without error and that *556 plaintiff’s liability to its subcontractor had been correctly and properly ascertained. The mistake was made by the representatives of the Secretary of War.
There is no question the larger amount is the true liability of the Government to the-plaintiff. It can not be disputed a mistake was made. The defendant’s chief witness, a major in the Army, who sat on both boards, testified clearly a mistake was made by the auditors and the plaintiff was deceived, unintentionally, into believing the amount was correct when the final settlement contract was executed, and payment accepted. The defendant does not deny the larger amount is the correct amount but relies on the settlement contract, which contains a general release of all claims and demands of whatsoever nature, as a defense. The release is sweeping in its tenor and no court would reopen it unless a mutual mistake was clearly established. We think the facts do show such a mutual mistake. In all good conscience and honest dealings the defendant should pay what it contracted to pay — the amount found to be justly due. To hold the release binding would be tantamount to allowing the defendant to take advantage of its own mistake.
The case of United States v. William Cramp & Sons., 206 U. S. 118, is not applicable. In that case all the facts were known to both parties when the general release was executed.
Both the plaintiff. and defendant believed the item of $9,921.68 was the just amount due the subcontractor when the settlement contract was executed. Both of them were mistaken. It was a mistake of fact, not of law. The contract should be reformed. Gem Hammock & Fly Net Company v. United States, 60 C. Cls. 262; Ackerlind v. United States, 240 U. S. 531; Hygienic Fibre Co. v. United States, 59 C. Cls. 598; Chicago, Wibnington & Franklin Coal Company v. United States, 59 C. Cls. 708.
We are of the opinion that the plaintiff is entitled to have the settlement contract reformed so as to make it speak the intention of the parties by including the correct amount due the Farrell-Cheek Steel Foundry Company and that upon such reformation the plaintiff is entitled to recover the *557 amount claimed. Judgment will be awarded the plaintiff in. the sum of $11,117.78. It is so ordered.
Williams, Judge; Littleton, Judge; Geeen, Judge; and Booth, Chief Justice, concur.