## AMERICAN CYANAMID CO. v. UNITED STATES.
### No. J—297.
Court of Claims.
Nov. 6, 1933.

942

H. H. Shelton, of Washington, D. C., for plaintiff.

Ralph C. Williamson and W. W. Scott, both of Washington, D. C., for defendant.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

With reference to the sufficiency of the claim for refund filed by plaintiff for the fiscal year 1920, the facts clearly establish that the grounds of this claim were those upon which the refunds made and the overpayment of $74,350.90 involved in this case were determined. There is no question as to the amount of the overpayment for 1920. The amount claimed was determined by the Commissioner, but his reason for refusing to schedule this overpayment and refund the same was that it resulted from adjustments of income and invested capital; that the claim for refund theretofore filed had not specifically made these items a basis of the refund claimed; and that as no timely claim for refund had been filed based on the adjustments made by the Commissioner in consolidated income and invested capital, the refund of the overpayment in question was barred by the statute of limitation. This is the govern-ment's sole defense to this suit on this phase of the case. We can find no merit in it.

As shown by the findings, plaintiff filed a consolidated income and profits tax return showing in detail the items of income, invested capital, deductions, and credits, and paid a tax of $190,433.73 after taking a deduction against the tax shown on the return of $49,-841.48, taxes actually paid to Canada. Plaintiff employed the accrual method of accounting and was entitled under the statute to deduct from the tax shown on the return the Canadian tax accrued for 1920, which, at the proper rate of exchange, was $311,727.73. Thereafter plaintiff filed a timely claim for refund for 1920 based upon the specific ground that all of the items shown in the return filed were correct except the deduction for Canadian taxes, which had been understated in the amount of $318,903.83. The claim stated that "It is now claimed that this company erred in deducting from item No. 12 [on the return] the Canadian business profits war tax paid during the taxable year and that it should have deducted the Canadian business profits war tax actually related to the income of the taxable year ended June 30, 1920. * * *" The refund claim went further. It set out the law, set forth and quoted the computation of the return as made, and gave a new computation based upon the new deduction which showed that by reason of the increase in the deduction on account of Canadian taxes plaintiff had overpaid its tax for the year in question in the amount claimed. Even if it had been necessary for plaintiff to specify, in connection with its claim for refund, the various adjustments which the Commissioner from time to time proposed in the income, invested capital, and deductions shown on the return, we think the facts clearly show that plaintiff sufficiently did so specify in the original claim for refund and the written protest filed in connection therewith, which protest was considered by the Commissioner in connection with the claim for refund. This protest related to and was directed to the contention made in the claim for refund that plaintiff was entitled to the refund of the total overpayment resulting from the increased deduction for Canadian taxes. However, we need not pursue this matter further for the reason that, in the circumstances of this case, it was not necessary under the statute relating to claims for refund that plaintiff file a refund claim or amend the one already filed so as to claim a refund based on the proposed adjustments by the Commissioner to items set forth

by the taxpayer in the return when such proposed adjustments did not result in any additional tax, and no additional assessment in excess of the tax shown on the return was ever made by the Commissioner. The Commissioner ultimately, when he rendered his final decision on plaintiff's claim for refund, receded from his earlier position that the consolidated net income shown on the return should be increased because of adjustments in the consolidated invested capital and deductions taken on the return and from the positions taken by him in the refunds allowed and paid, with the result that the balance of the overpayment here involved resulted directly from the original allowance of plaintiff's claim for the increased deduction for accrued Canadian taxes. No additional tax was ever assessed or collected from plaintiff and no portion of the overpayment involved grew out of any item other than the deduction for Canadian taxes. Moreover, the claim for refund involved in this case especially set forth, as a ground thereof, that the return as filed and the computation shown thereon as corrected by the proper deduction for Canadian taxes were correct. The ultimate decision of the Commissioner determining the overpayment in question was substantially an agreement with this contention. No new items of income were ever brought into the case and the Commissioner at no time ever assessed, or proposed to assess, any tax in excess of that shown on the return.

The Commissioner never finally rejected plaintiff's claim for refund until he refused, some time in 1930, to schedule and refund the overpayment of $74,350.90. At the time the Commissioner made the partial allowances of an overpayment of $49,903.38, some time in 1926, and of $15,433.12, about December 13, 1927, the matter of the overpayment to which plaintiff was entitled on account of deductions for Canadian taxes had not been finally determined on account of the fact that the matter of the correct invested capital and tax for the fiscal years 1918 and 1919 was pending before the Board of Tax Appeals. Both the Commissioner and the plaintiff knew that if any of the plaintiff's contentions before the Board as to prior years should be allowed, these adjustments would necessarily carry over into the year 1920 and affect the amount of its tax for 1920 as computed by the Commissioner without giving effect to any such adjustments. In these circumstances it was understood and agreed between the plaintiff and the Commissioner that the final determination of the tax and the amount of the over-

payment to which plaintiff was entitled for 1920 would await the decision of the Board of Tax Appeals for prior years.

Plaintiff is therefore entitled to recover the admitted overpayment of $74,350.90, with interest as provided by law.

■ The next phase of the case involves the withholding by the Comptroller General on June 21, 1926, of $26,557.67 of the overpayment of tax and interest allowed by the Commissioner in the amount of $63,524.50, on the ground that plaintiff had been overpaid by the government under a war contract for furnishing ammonia. This alleged indebtedness of plaintiff represented the amount paid plaintiff by the War Department under an original and a supplemental contract on account of an increase in freight rates added to the price of 8¼ cents a pound for ammonia delivered to the defendant under the original procurement order of February 15, 1918, the formal contract of January 1, 1918, and the supplemental contract executed in October, 1918.

The Comptroller General based his action on the conclusion that the original procurement order and the original contract did not provide for the payment to plaintiff of any increase in freight rates, that this was never intended by the parties to the contract, was not omitted from the formal contract of January 1, 1918, through inadvertence and mutual mistake, and that the supplemental contract executed in October, 1918, was without consideration, made without authority, and, therefore, void. Counsel for the defendant makes the same contention here and insists that plaintiff is not entitled to recover the amount withheld. We cannot agree. The undisputed facts disclose that the War Department in December, 1917, negotiated with plaintiff for the purchase by the government and delivery by plaintiff of a designated quantity of aqua ammonia at a specified price of $0.08¼ a pound; that a procurement order correctly embracing the terms agreed upon was given and accepted; that a formal contract was entered into, intended to embrace the terms of negotiation and the procurement order; and that, by oversight, inadvertence, and mutual mistake, the freight clause above quoted was omitted from the formal contract. The defendant, then in charge of the railways, increased freight rates and plaintiff thereafter included this increase in its invoices for ammonia delivered; because of such inclusion the payment of the invoices was held up by the New York ordnance office, thus, for the

first time, calling plaintiff's attention to the fact of such omission of the freight clause from the formal contract. The matter of correcting the error was taken up with those who had made it and the error was corrected by a supplemental contract under an order of the Chief of Ordnance who stated that the omission of the freight clause was due to inadvertence, and the supplemental contract recited that the omission was "through inadvertence and mutual mistake." The Chief of Ordnance, the contracting officers, and the official who carried on the negotiations with plaintiff and arrived at the original contract agreed with plaintiff that the addition of any increase in freight rates to the specified price of 8¼ cents was intended and provided for in the original procurement order and that specific provision therefor in the original form of contract was omitted through inadvertence and mutual mistake. There is no evidence to the contrary.

Counsel for the defendant contends that the original procurement order is not susceptible of the construction that any increase in freight rate charges was to be allowed plaintiff on ingredients entering into the manufacture of ammonia or on shipments by plaintiff to the defendant of the finished product at certain, designated points. In our opinion the plain language of the procurement order and all the evidence in the case refutes this contention. The original procurement order, which was signed by plaintiff, provided for the manufacture and delivery of aqua ammonia at a stated price per pound f. o. b. any point designated by the Chief of Ordnance within a certain radius, and then provided that "any * * * increase in freight rate to be · * * * added to delivered price, $0.08¼." We think this could only mean that plaintiff was entitled to add to the price specified any increase in freight rates, whether on the ingredients entering into the manufactured product or on the finished product delivered to the defendant. There are no other provisions in the contracts calling for a different conclusion and there is not the slightest evidence in the record that supports the contention made by the defendant. There was clearly a mutual mistake and the supplemental contract executed in October, 1918, was valid. Plaintiff was therefore entitled to the allowance made and paid by the War Department and is entitled to recover the amount of the overpayment of tax withheld by the Comptroller General and applied as an offset

against such allowance. Even if there had been no supplemental contract, we would hold under the facts disclosed by the record in this case that plaintiff should recover the increased freight rates, amounting to $26,557.67, because of the mutual mistake. Harvey v. United States, 105 U. S. 671, 26 L. Ed. 1206; Cramp & Sons Ship & Engine Bldg. Co. v. United States, 239 U. S. 221, 36 S. Ct. 70, 60 L. Ed. 238; Ackerlind v. United States, 240 U. S. 531, 36 S. Ct. 438, 60 L. Ed. 783; Poole Engineering & Machine Co. v. United States, 58 Ct. Cl. 9; Chicago, Wilmington & Franklin Coal Co. v. United States, 59 Ct. Cl. 708; Ordnance Engineering Corp. v. United States, 62 Ct. Cl. 204. In Heid Brothers v. United States, 63 Ct. Cl. 392, a case very similar to the present one, this court said: "It is quite evident that both parties to the contract believed the provision providing for the increase or decrease in freight rates was embodied in the contract when it was signed by them; due to mistake, which was mutual, the provision aforesaid was omitted from the contract. Both parties understood the obligations imposed by the contract to be different from those stated in the written instrument. In such a case the court will reform the contract in accordance with the real intention and understanding of the parties shown by the evidence. * * *"

The omission of the freight clause agreed upon and contained in the procurement order as accepted was, by mutual mistake and inadvertence, omitted from the formal contract. This omission was corrected by the parties themselves who were in a position best to know what had been agreed upon. The defendant received the goods contracted for and a final settlement agreement, made in good faith, was entered into by the parties. We can find no valid reason for ignoring what was done. The plaintiff is, therefore, entitled to recover the amount of $26,557.67 withheld on June 21, 1926, with interest thereon at 6 per cent. per annum from that date until March 3, 1933, under the Act of March 3, 1875, 18 Stat. 481 (31 USCA § 227). Ernest C. Whitbeck, receiver, L-W-F Engineering Co., Inc., v. United States, no. F-322, decided April 10, 1933; Chicago, Indianapolis & Louisville Ry. Co. v. United States, no. K-474, decided June 5, 1933.

Judgment will therefore be entered in favor of plaintiff for $100,908.57, together with interest, as set forth in the conclusion of law herein. It is so ordered.