## HOYT v. UNITED STATES.
### No. 42129.

Court of Claims.
Dec. 6, 1937.

356

360

Edward F. Colladay, of Washington, D. C., and Wm. D. Gaillard, of New York City (Colladay, McGarraghy, Colladay & Wallace, of Washington, D. C., and Gaillard, Fisher, Allen & Bateson, of New York City, on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., James W. Morris, Asst. Atty. Gen., and Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

■ In principle this case is like that of Bourne v. United States, 2 F.Supp. 228, 76 Ct.Cl. 680, and Jones, et al. v. United States, 5 F.Supp. 146, 78 Ct.Cl. 549. Compare Night Hawk Leasing Co. v. United States, 18 F.Supp. 938, 84 Ct.Cl. 596; American Cyanamid Co. v. United States, 4 F.Supp. 937, 78 Ct.Cl. 313. On the facts disclosed by the record, when considered in the light and in the manner in which they were considered and treated by the taxpayer and the Bureau of Internal Revenue, there was no fatal departure from the requirements of the statutes relating to claims for refund, nor was there a material departure from the requirements and the procedure authorized by the rules and regulations of the Bureau of Internal Revenue with reference to bringing the matters in controversy to the attention of the Commissioner and to disclosing the grounds and the facts upon which the Commissioner might intelligently act in the premises. The only departure from the perfect procedure upon which counsel for defendant insists was merely a matter of form and not of substance. Had the estate typed upon a printed Treasury Form, 843, the written statements concerning the items of the claims against the estate and the administration expense involved in this suit or prepared on such a printed form the subsequent sworn statements concerning these items and the grounds and the facts disclosed in such sworn statements with reference to the propriety and legality of the claimed treatment of such items in the determination of the tax liability of the estate for any refund to which it might be entitled, a demand for refund within the meaning of the statutes and the regulations would not, in substance, have been more definitely asserted. Moreover, these matters and the facts relating thereto were brought to the attention of the authorized representatives of the Commissioner during consideration and audit of the returns and the consideration of all matters affecting the value of the estate and the resulting tax liability. At that time it was understood and agreed by the Commissioner's office that these matters, particularly with reference to the claims of Rockefeller and others and the executors' fees and commissions which were until November, 1929, indefinite only as to amounts, should be suspended and held in abeyance pending ascertainment of the amounts which might be allowed as deductions in determining the correct tax liability of the estate. The Commissioner was not in any way misled. He had before him all the facts with reference to the items which the executors could furnish; the grounds on which the estate claimed that some allowance as deductions from the gross estate should be made on account thereof and he recognized that a proper refund resulting from the deductions, to which estate claimed to be entitled, should be made. The Commissioner was in a position to act in the premises had he so desired. He did act and rendered a decision with reference to the Thomas H. Frothingham note item as we shall hereinafter show. However, with reference to the matter of the deductions to which the estate might be entitled on account of the claims of Rockefeller and others and the executors' fees and commissions, the Commissioner, as the facts disclose, agreed to wait until definite figures could be submitted on these items. He was clearly authorized to do this, thereby keeping the matter open. Such amounts were definitely determined in 1929, whereupon the estate submitted proof of the correct amounts to the Commissioner and requested the allowance as deductions and the refund of the resulting overpayment in accordance with its claims and the contentions previously and timely made. The deductions were refused and the claim for refund was denied on the ground that claim therefor had not been asserted within the time required by law. In this we think the Commissioner erred with respect to the claimed deductions of $582,681.48 paid to Rockefeller and others in settlement of claims against the estate and of $123,640.70, executors' fees and commissions allowed by the Surrogate's Court. Plaintiff is therefore entitled to recover such overpayment as may result from the allowance of these items as deductions from the gross estate, together with interest as provided by law.

With reference to the item of $113,440.68, representing the principle and interest of a note of Thomas H. Frothingham which the estate paid upon default of the maker on demand of the Chatham & Phenix National Bank, it appears that the Commissioner in his allowance of a partial refund of $27,365.71 on September 17, 1924, definitely decided upon this item in accordance with the contention then made by the estate. Shortly prior to the date mentioned the Commissioner had taken this item up for consideration and proposed in connection with an audit and investigation of the estate to increase the gross estate by the amount of $69,500 by reason of the fact, as found by him, that the stock of the Old Reliable Motor Truck Corporation, which was received by the estate when the Frothingham note was paid, had a value in excess of the principle and interest of the note. The estate requested that this not be done but that the stock be treated as taking the place of the amount paid on the Frothingham note for the reason that "On the occasion of an early hearing in Washington we received the impression that under the circumstances the Government would be disposed to waive the question of the ultimate application of the collateral if the debt to the Chatham & Phenix Bank was not pressed as a deduction; or, in other words, that the estate be considered as having been repaid; and we had presumed that the item would be subject to disposition upon some such basis. We are still willing that the matter be disposed of in this way so as to reduce in so far as possible the element of contingency." The Commissioner treated the matter of the Frothingham note and the Old Reliable Motor Truck Corporation stock in the manner requested. In holding that the motor corporation stock received by the estate upon payment of the note repaid it for the amount paid out, the Commissioner acted upon the claim of the estate for a deduction on account of payment of this note. This suit was not instituted until more than two years after that decision. Plaintiff is, therefore, not entitled to recover on this item. The Old Reliable Motor Truck Corporation was discharged in bankruptcy July 10, 1927. The loss, if any, which may have been sustained by the estate on that account was a deduction properly to be allowed from income in the year in which the loss was sustained. That question is not before us.

Judgment for the amount due plaintiff will be entered upon the filing of a computation of the amount of the overpayment in estate tax in accordance with this opinion. It is so ordered.