## UNITED STATES v. PIEROTTI.
### No. 10898.

Circuit Court of Appeals, Ninth Circuit.
April 2, 1946.

Sewall Key, Acting Asst. Atty. Gen., and Helen R. Carloss and Carlton Fox, Sp. Assts. to Atty. Gen., and Charles H. Carr, U. S. Atty., and Edward H. Mitchell, Asst. U. S. Atty., both of Los Angeles, Cal., for appellant.

A. Calder Mackay, Arthur McGregor, Howard W. Reynolds, and Charles J. Higson, all of Los Angeles, Cal., for appellee.

Before DENMAN, STEPHENS, and ORR, Circuit Judges.

ORR, Circuit Judge.

In this opinion appellant will be referred to as the Government and appellee as taxpayer.

The question involved is whether the property owned by taxpayer and her husband at the time of his death was held by them in joint tenancy or as so-called new style "post-1927" community property under California law.

In assessing the tax the Government included all the property held by the parties at the time of the husband's death. Taxpayer contended that only one-half should have been included. If the property was owned in joint tenancy the Government was correct in its position. If owned as community property (new style, post-1927) the contention of taxpayer must be sustained The trial court gave judgment in taxpayer's favor for the sum of $2,852; this included the amount assessed as a deficiency by the Commissioner of Internal Revenue, and interest thereon, which said sum was paid by taxpayer.

In its appeal from said judgment the Government poses three questions which we are asked to determine:

"1. Whether the claim for refund presented to the Commissioner the issue decided by the District Court, namely, that certain real property held by the decedent, Attilio Pierotti, and his wife, Jane S. Pierotti, as joint tenants with right of survivorship, was in fact 'post-1927' community property and that hence only one-half thereof—the decedent's half—was includible in his gross estate tax purposes and, if not, whether the Commissioner waived any defects in the claim.

"2. Alternatively, whether a decree of the Superior Court of California, in and for Orange County, wherein and whereby it was adjudged and decreed that at the date of his death the property in question was owned jointly by him and his wife with right of survivorship, and that such tenancy was terminated by his death and title in fee simple thereto vested in her, establishes for the purposes in hand that such was the tenure of the parties in the property at his death under California law.

"3. Alternatively, whether there is evidence to sustain the District Court's finding that at the time of the decedent's death no interest was held by him in the property in question as a joint tenant, or, if there is, then whether the finding nevertheless is clearly erroneous."

On November 29, 1938, appellee, as executrix of her husband's estate filed an estate tax return in Orange County, California, in which she included one-half the value of two tracts of real property. The return stated that she and her husband owned the real property as joint tenants. The return also stated that "all property of decedent is claimed to be the community property of decedent and Jane S. Pierotti pursuant to agreement executed on or about the 20th day of November, 1928."

On June 27, 1940 taxpayer filed a claim for refund of this sum on the ground that "such tax was based upon the inclusion in the decedent's gross estate of the entire value of all real and personal property standing in the name of decedent and his said wife as joint tenants, whereas only one half of such value should have been included therein for the reason that decedent's said wife had acquired her joint tenancy interest in such property for full and adequate consideration."

On October 14, 1940 taxpayer filed an affidavit of one Albert Launer "in support of the claim and contention of Jane S. Pierotti that one-half of the properties reported by her * * * be not considered or treated as subject to return herein for federal estate tax." This affidavit stated that Launer had been employed in November 1928 as attorney for taxpayer and decedent to make necessary arrangements for all of decedent's property to be so vested that title thereto would be "new style" or "post-1927" California Community property within the provisions of § 161a of the Civil

Code of California, enacted in July 1927.[1] The affidavit further stated that decedent had requested that his property be so vested between himself and his wife as to cause her the least inconvenience and expense on his death.

Mr. James S. Sheehy, an internal revenue agent, called at the office of taxpayer's present attorney and requested further information relative to the claim filed by taxpayer.

On November 20, 1940 taxpayer's counsel, in response to said request, by letter informed the local internal revenue agent that the land involved here had been transferred by means of a strawman conveyance to decedent and taxpayer in joint tenancy "after the oral agreement was made between Mr. and Mrs. Pierotti that all of their property would be new style community under the laws of the State of California, as provided by § 161a of the Civil Code, as amended by the Legislature in 1927."

On February 1, 1941 the Government rejected the claim for refund. On December 16, 1942 taxpayer instituted this suit for refund, basing her claim in Paragraph V of the complaint upon the ground that "the Commissioner included in the decedent's gross estate the entire value of all real and personal property standing in the name of decedent and his wife as joint tenants, whereas only one-half of such value should have been included therein, for the reason that said property was community property in which plaintiff had a present, equal, and existing interest by virtue of the provisions of Sec. 161a of the Civil Code of California."

The Government, by its amended answer, admitted the allegations of Paragraph V of the complaint. The amended answer contained certain allegations pertaining to an affirmative defense which the Government, in its brief, states is not material here.

In the Government's pre-trial memorandum in the District Court taxpayer's theories of recovery were discussed as follows:

"Plaintiff apparently has two theories upon which she will base her contention * * *. First, she will, we assume, endeavor 'to show' that, at some time prior to the acquisition or transformation of the property into joint tenancy, the decedent orally 'declared' the property to be California community property of the type attributable to the toil or talents of one of the spouses exerted after July 29, 1927."

The trial court found that decedent and taxpayer orally agreed to transform their property into "new style" California community property and that pursuant to that agreement and by means of strawman conveyances they had taken title to the realty involved here as joint tenants. The court further found that all decedent's property was community property as defined by California Civil Code § 161a, and gave judgment for taxpayer in the full amount claimed.

The Government then, in its objection to the form of the second findings of fact, raised, for the first time, the question of a variance between taxpayer's claim and her complaint. The contention was that the claim asked a refund on the ground that taxpayer as a joint tenant had paid full and adequate consideration for her half of the land, whereas the complaint and the proof showed that only one-half the land should be included in the gross estate because it was "new style" community property, and that therefore there was a fatal variance. The trial court, in answer to this contention, held that "The evidence discloses that the Commissioner had evidence before him, whereby the plaintiff's theory of recovery was fully available to him. Nor was counsel for the Government caught by surprise, as the pre-trial statement presented to the court clearly indicated he was fully aware of the theory upon which plaintiff hoped to recover. If any variance existed, in my opinion, the same was waived."

Section 3772(a) (1)[2] of the Internal Revenue Code (26 U.S.C.A. Int.Rev.Code, § 3772) and § 81.96 of Treasury Regulations.

---

[1] "§ 161a. [Interests in community property.] The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in the community property." [Added by Stats.1927, p. 484.]

[2] Internal Revenue Code: "Sec. 3772. Suits for Refund. (a) Limitations.—(1) Claim.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or

105 [3] require that a claim for refund must be filed in accordance with the regulations and must set forth in detail each ground on which a refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. These regulations further provide that a claim will not be considered defective solely by reason of the fact that it is not made on the form prescribed by the Treasury.

The tax in question was paid on November 21, 1939. Therefore, taxpayer had three years from that date to file her claim for refund.[4] Here taxpayer filed her formal claim in June 1940 and in October and November of that year [two years before the statute of limitations would run on her claim] supplemented it with the affidavit and letter hereinbefore referred to. The affidavit and the letter each clearly indicated that at least one of the grounds on which taxpayer claimed as refund was that the property in question was "new style" community property and for that reason but one-half its value should be included in her husband's gross estate.

■ The Supreme Court of the United States has held that a notice fairly advising the Commissioner of Internal Revenue of the nature of taxpayer's claim which could nevertheless be rejected by him because too general or not complying with formal requirements, may be amended *after* the statute of limitations has run to correct the lack of specificity.[5] It would therefore seem clear that supporting documents adding new and alternate grounds for refunds, filed with the Commissioner two years *before* the statute of limitations had run, may be considered as amendments or additions to the original claim.

■ The principal requirement of the law and the regulations is that the Commissioner be apprised of the exact basis of each ground on which a refund is claimed in order that he may investigate the facts relative to these grounds and make his decision accordingly.

■ A taxpayer may state as many grounds for refunds as he wishes, regardless of consistency, provided facts are disclosed on which the Commissioner may act. Kales v. United States, 6 Cir., 115 F.2d 497, 501, affirmed 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132. Affidavits, letters or other statements filed with the Commissioner in support of the claim may all be considered as part of the claim for refund, if they bring the matters in controversy to the attention of the Commissioner and disclose grounds and facts on which he may act intelligently.[6]

Here taxpayer's claim, together with the supporting affidavit and letter set forth clearly that one of her grounds for refund was that all decedent's property was transformed into "new style" community property and that therefore only one-half the value of the real estate should have been included in her husband's gross estate. In this connection it should be noted that the record discloses that the letter of taxpayer's present counsel supplementing her claim was sent in answer to the Government's request for additional information, indicating that the claim as filed was not considered final by the government.

---

of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

[3] Treasury Regulations 105, promulgated under the Internal Revenue Code: "Sec. 81.96. Claim for refund.—A claim for refund of estate tax, or for refund of interest or penalties, erroneously or illegally collected, shall be made on the form prescribed by the Treasury Department (Form 843), and should be filed with the collector of internal revenue, although a claim will not be considered defective solely by reason of the fact that it is not made on the form or that it is filed with the Commissioner of Internal Revenue. The claim must set forth in detail and under oath each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof. Any claim which does not comply with the requirements of the preceding sentence will not be considered for any purpose as a claim for refund.

"Claims for the refund of estate tax imposed by the Internal Revenue Code must be filed within three years next after the payment of the amount sought to be refunded."

[4] 26 U.S.C.A. Int.Rev.Code, § 910, Revenue Act of 1926, Sec. 319(b), as amended in 1932.

[5] Kales v. United States, 314 U.S. 186, 194, 62 S.Ct. 214, 86 L.Ed. 132.

[6] See Hoyt v. United States, 21 F.Supp. 353, 360, 86 Ct.Cl. 19.

The claim, including the affidavit and letter, did put the Government on notice that taxpayer claimed the land was held as community property as appears from the Government's amended answer admitting an allegation to this effect in taxpayer's complaint. Said amended answer also set up an affirmative defense in anticipation of a finding by the trial court that the land was in fact "new style" community property. In addition, in its pre-trial memorandum, the Government demonstrated clearly that it had notice taxpayer might proceed on the theory that this land was community property rather than held in joint tenancy.

[5] The finding of the lower court that the Commissioner had evidence before him which made taxpayer's theory of recovery fully available to him has ample support in the evidence in this case. The views we have expressed as to the sufficiency of the claim make it unnecessary to consider the question of waiver.

In support of its second point the Government contends that because taxpayer and her husband held legal title to the property as joint tenants it could not be held as community property and that evidence could not be received to vary the terms of the deed.

■ It is conceded that state law governs in determining the gross estate of a decedent for federal estate tax purposes, and in determining the nature of the tenancy by which property is held by married persons in California.[7]

■ Under California law it is clear that parol evidence may be admitted to establish that real property is intended to be community property though title thereto be taken by the husband and wife as joint tenants.[8]

The Tomaier case[9] also restated the settled California rule that property may be converted into community property at any time by oral agreement between the spouses. Here the evidence shows that taxpayer and her husband, after an agreement between themselves to hold their property as community property, requested their attorney to take the necessary steps to transform all their property into "new style" California community property following the addition of § 161a to the California Civil Code. And, although on advice of their attorney, they had a deed made to them as joint tenants, this court should in accordance with settled law "prevent the use of common law forms of conveyance to alter the community character of real property contrary to the intention of the parties.[10]

■ Here the intent of the spouses is evident and the finding of the lower court that taxpayer and decedent considered and treated all their property, including that held in joint tenancy, as community property is amply supported by the evidence.

■ Finally the Government urges that taxpayer may not now assert that the property held in joint tenancy was in reality intended to be community property, for the reason that following the death of her husband, she filed a petition in the California Superior Court for Orange County under the old section 1723 of the California Code of Civil Procedure.[11] This petition is entitled "Petition for a decree establishing death of a joint tenant" and prays that decedent's interest in the real property under the joint tenancy be terminated. The Superior Court entered the decree in accordance with §§ 1173–1175 of the Probate Code of California. The contention is that this decree is binding on taxpayer and conclusively establishes the fact that this property was held in joint tenancy.

But the Code section itself narrows the effect of a judgment rendered pursuant thereto as "establishing the fact of the death, which judgment shall be prima facie evidence of the fact of the death."[12] The Supreme Court of California, in Hansen v. Union Savings Bank, 148 Cal. 157, 82 P. 768, held that the proceeding provided by this section is only to determine that a person is dead, and that the asserted right of another depends upon his death, and further, that proceedings under this section are

---

[7] Greenwood v. Commissioner, 9 Cir., 134 F.2d 915, 918; Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239.

[8] Tomaier v. Tomaier, 23 Cal.2d 754, 757, 146 P.2d 905; see also, Sears et al. v. Rule et al., Cal.Sup., 163 P.2d 443; Hulse v. Lawson, 212 Cal. 614, 619, 620, 299 P. 525.

[9] See Note 8.

[10] Tomaier v. Tomaier, 23 Cal.2d 754, 757, 146 P.2d 905, 907.

[11] Now §§ 1170–1175, California Probate Code.

[12] Deering, Probate Code of California, § 1174, found in Article 1 of Chapter XXI of the code, entitled "Establishment of Fact of Death."

not to adjudicate conclusively the validity of the *rights* asserted.[13]

The Government argues that the Hansen case is limited by reason of the fact that it involved persons claiming rights in the property who had not been made parties to the proceedings under the code section, and contends that where, as here, taxpayer was a party to the proceeding under the code section she is conclusively bound by it. While we may concede the elementary proposition that taxpayer, as a party to the decree, is bound by the decree, she is only bound by what that decree determines, namely that the fact of her husband's death is established.[14]

The intent of the spouses to hold this land as community property despite the conveyance to them as joint tenants is clear and evidence of that intent was correctly admitted below. The judgment is affirmed.

Affirmed.

[13] See also, King v. Pauly, 159 Cal. 549, 115 P. 210, Ann.Cas.1912C, 1244.

[14] As a matter of fact, as taxpayer states, the California Superior Court in the same decree adjudged that no state inheritance tax was payable, basing its finding on the report of an inheritance tax appraiser which stated that the estate of decedent was acquired out of community funds. Thus the decree in its wording affords comfort to both sides, but its effect is only to establish the fact of death.