UNITED STATES v. MILLIKEN IMPRINTING COMPANY.

APPEAL FORM THE COURT OF CLAIMS.

No. 227.  Argued April 16, 17, 1906.—Decided April 30, 1906.

A corporation having a contract with the Government to imprint revenue stamps received notice as to renewal which, among other things, stated that no application for such contracts would be considered from persons not already having one; the corporation applied for and obtained a renewal and the contract when delivered contained no provision for not giving contracts to persons not then engaged in imprinting stamps;

during its life a similar contract was given to such a person and the corporation sued in the Court of Claims for reformation of its contract on ground that the omission was mutual mistake and also for loss of profits on business diverted to such person. The Court of Claims took jurisdiction and awarded damages. *Held,* by this court in reversing the judgment on the merits:

While reformation of the contract is not an incident to an action at law; and can only be granted in equity; under § 1 of the act of March 3, 1887, 24 Stat. 505, the Court of Claims has jurisdiction to reform a contract, and of the money claim under the contract as it should have been drawn.

On the evidence in this case there was no mutual mistake justifying the reformation of the contract.

THE facts are stated in the opinion.

*Mr. Louis A. Pradt,* Special Assistant to the Attorney General, with whom *The Solicitor General* was on the brief, for the United States:

The Court of Claims was without jurisdiction in equity. *Harvey* v. *United States,* 105 U. S. 679; *Jones* v. *United States,* 131 U. S. 1. Its jurisdiction in equity is derived from special statutes. *District of Columbia* v. *Barnes,* 197 U. S. 146.

There was an entire failure of proof of mistake. The purpose of an action for reformation of a contract on the ground of mistake is not to interpret the written contract, but to correct it so that it shall truly state the agreement of the parties. And since in such an action the court is simply called upon to declare the true and complete contract of the parties, which the written contract, through mistake, does not fully set forth, it is clear that the mistake alleged must be mutual. *Alabama Midland Ry. Co.* v. *Brown,* 98 Alabama, 648; Pomeroy's Eq. Jur. §§ 870, 1376; *Maher* v. *Hibernian Insurance Co.,* 67 N. Y. 290.

The evidence of this mutual mistake must be clear and convincing—"the strongest possible." Pomeroy's Eq. Jur. § 850; 1 Story's Eq. Jur. § 152; *Phœnix Fire Ins. Co.* v. *Gurnee,* 1 Paige Chancery Rep. 279; *Newton* v. *Holley,* 6 Wisconsin, 604. The mistake must be established beyond reasonable doubt. *Hearne* v. *Marine Ins. Co.,* 20 Wall. 490; *Stockbridge Iron Co.* v.

*Hudson Iron Co.*, 102 Massachusetts, 49, *Meade* v. *West Chester Fire Ins. Co.*, 64 N. Y. 455; 1 Story's Eq. Jur., 13th ed., 153.

At most, the proof shows only a one-sided mistake and this is not ground for reforming a contract. *Hearne* v. *Marine Ins. Co.*, 20 Wall. 491.

*Mr. Malcolm Lloyd, Jr.*, and *Mr. David Milliken* for appellee:

The Court of Claims has jurisdiction in equity. *South Boston Iron Works* v. *United States*, 34 C. Cl. 200; *District of Columbia* v. *Barnes*, 197 U. S. 146.

A contract may be reformed and enforced as reformed, in the same action. *Harvey* v. *United States*, 105 U. S. 671; *Avery* v. *Eq. Assn. Soc'y*, 52 Hun, 392; *Maher* v. *Ins. Co.*, 67 N. Y. 283; *Jaye* v. *Ins. Co.*, 55 N. Y. 657; *West* v. *Suda*, 69 Connecticut, 60.

A bill or complaint which asks the rectification of a mistake in a written contract and the enforcement of the instrument as reformed states but one cause of action. *Harvey* v. *United States*, 105 U. S. 671; *Avery* v. *Ins. Co.*, 52 Hun, 392; *Maher* v. *Ins. Co.*, 67 N. Y. 283; *Jaye* v. *Ins. Co.*, 55 N. Y. 657; *West* v. *Suda*, 69 Connecticut, 60; *Hutchinson* v. *Ainsworth*, 73 Colorado, 452; *Franklin Ins. Co.* v. *McGea*, 4 Greene (Iowa), 229; *McClurg* v. *Phillips*, 49 Missouri, 315; *Mayer* v. *Van Cullam*, 7 Abb. Pr. (N. Y.) 222; Pomeroy on Remedies, § 459.

The written application in connection with the proposal and the acceptance of that application constitutes the contract between the parties. *Hearne* v. *Ins. Co.*, 20 Wall. 488; *Equitable Ins. Co.* v. *Hearne*, 20 Wall. 494; *Harvey* v. *United States*, 105 U. S. 671; *Garfield* v. *United States*, 93 U. S. 242.

There was in the first written draft agreed upon by the claimant and defendant, the contract between them. *Palmer* v. *Hartford Ins. Co.*, 54 Connecticut, 510. Where the agreement, as reduced to writing, omits terms or stipulations contrary to the common intention of the parties, the instrument will be corrected or reformed, so as to make it conform to their real intent. *Hearne* v. *Marine Ins. Co.*, 20 Wall. 488; *Hunt*

v. *Rousmainer,* 1 Pet. 1; *Andrews* v. *Essex Ins. Co.,* 30 Mason, 10; *Oliver* v. *Mutual Ins. Co.,* 2 Curtis, 277; *Van Tuye* v. *Ins. Co.,* 55 N. Y. 657; 2 Pomeroy's Eq. Jur. § 849; 1 Story's Eq. Jur. § 152.

The real question is, not what the real instrument was intended to mean or how it was intended to operate, but what it was intended to be. *Tillis* v. *Smith,* 108 Alabama, 264; *Connor* v. *Armstrong,* 86 Alabama, 265; *Midland R. R. Co.* v. *Brown,* 98 Alabama, 647; *Parker* v. *Parker,* 88 Alabama, 362.

The mistake is documentary and indisputable. This court will not review the finding of the Court of Claims in this respect. *United States* v. *Smith,* 94 U. S. 214.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a petition praying for the reformation of a contract and for damages for breach of the same as reformed. The Court of Claims granted the prayer and made a decree for damages, 40 C. Cl. 81, whereupon the United States appealed to this court.

The contract is an elaborate and formal instrument, dated June 19, 1899, under the seal of the petitioner and executed on behalf of the United States by the Commissioner of Internal Revenue. It is unnecessary to state its terms. Members of a partnership subsequently incorporated as the petitioner had a contract of like sort expiring July 1, 1899. On or about April 25, 1899, they received from the Commissioner of Internal Revenue the following communication bearing that date:

"*To contractors for imprinting stamps:*

"In awarding contracts for imprinting stamps on checks, drafts, and other instruments for the year commencing July first, 1899, it has been determined to add the following provisions to contracts in addition to these now contained in the existing contracts for imprinting stamps.

"Each contractor will be required to pay salaries aggregat-

ing thirty-four hundred dollars ($3,400) per annum for one
Government stamp agent and two counters, payable monthly.

"As compensation in full for imprinting stamps,.the con-
tractor shall charge all persons requiring the same the. sum of
eighty cents per thousand stamps imprinted, when imprinted
upon sheets containing five or more stamps, and one dollar
per thousand stamps when imprinted upon sheets containing
less than five stamps to the sheet.  In order to secure absolute
uniformity in prices these charges shall be rigidly adhered to,
and any evasion or attempted evasion of the express terms
hereof shall be deemed a violation of the terms of the con-
tract

"No application for contract to imprint stamps for period
named will be considered from any person, firm, or corporation
not now engaged in imprinting stamps under contract with the
Government.

"Each application for contract.must be accompanied by the
guarantee of at least two responsible persons, that in case con-
tract is entered into and accepted, bond will be furnished in
the sum of twenty-five thousand dollars ($25,000) for the
faithful performance thereof.

"The Commissioner reserves the right to reject any or all
applications and to cancel any contract wherever and when-
ever it shall appear to the interests of the public and the
Government to do so.

"Applications will be received at the office of the Commis-
sioner of Internal Revenue, Washington, D. C., until 12 m.,
May 25, 1899, such applications to be carefully sealed and
marked 'Applications for contract for imprinting internal
revenue stamps' and addressed to the Commissioner of In-
ternal Revenue.

                                  "G. W. WILSON,
                                      *Commissioner.*"

On May 25, 1899, the firm wrote to the Commissioner stat-
ing that they then had the privilege to imprint stamps, etc.,

and "would most respectfully make application to you for a contract to continue the same for the period of one year, commencing July 1, 1899, and in accordance with your official communication, dated April 25, 1899, we to pay salaries aggregating thirty-four hundred dollars for one Government stamp agent and two counters, and to receive as compensation for imprinting stamps the sum of eighty cents per thousand when imprinted upon sheets containing five or more stamps and one dollar per thousand when imprinted upon sheets containing less than five stamps per sheet." They added that they attached a guarantee to furnish the required bond and referred to letters accompanying the original application. This letter now is denominated an acceptance of what is called the offer of April 25, above set forth. The alleged mistake is the omission, from the formal contract, of the paragraph in that communication, to the effect that no application will be considered from any person not now engaged in printing stamps under contract with the Government, and the following one limiting the time for applying to May 25. After May 25 an application was accepted from the American Imprinting Company, a corporation not engaged in imprinting stamps under contract with the Government on April 25. The damages awarded were the profits which would have been made by the petitioner had it not lost the customers who went to the corporation last named.

The Government objects at the outset that the Court of Claims has no jurisdiction in equity, and that, although the petitioner's demand is for money under a contract as it should have been drawn, yet in this suit that demand is incident to the reformation asked, which certainly is true. Reformation is not an incident to an action at law, but can be granted only in equity. When relief is granted also on the contract as reformed it means only that the court of equity sees fit to go on and finish the whole case. But we are of opinion that the court was warranted in taking jurisdiction under a fairly liberal interpretation of the act of March 3, 1887, c. 359, § 1,

24 Stat. 505. That section gives the Court of Claims jurisdiction of "all claims founded . . . upon any contract, expressed or implied, with the Government of the United States, or for damages liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable." A claim for money upon a contract, which would be like a right of action at common law but for the need of help from equity to establish the contract, seems to us to fall within these words, in their obvious, literal sense. *District of Columbia* v. *Barnes*, 197 U. S. 146, 150, 152; *South Boston Iron Works* v. *United States*, 34 C. Cl. 174, 200.

We come then to the merits. It is unnecessary to consider whether the Court of Claims ought to have made the findings of fact required in an ordinary case. We leave that question where we find it. *District of Columbia* v. *Barnes*, 197 U. S. 146, 150; *Harvey* v. *United States*, 105 U. S. 671, 691. For we are of opinion that the United States was entitled to a ruling as matter of law that there was no evidence which would warrant a decree for the petitioner; and therefore it would be a useless form to send the case back for findings to be made.

The petitioner's case depends on the assumption that the communication of April 25 was an offer and that the letter of May 25 was an acceptance. But obviously this is a mistake. The former is a notice, not an offer. Its very first words, "In awarding contracts," contemplate the necessity of further action on the Commissioner's part. The clause which it is said should have been inserted speaks of an "application for contract," the right to reject applications is reserved in terms and directions are given for sending them and as to the time within which they will be received. In like manner the letter of May 25 purports to "make application to you for a contract," and refers to recommendations, thus showing that it was understood that the Commissioner might refuse what was asked. No preliminary agreement was made

and there was no new contract until the instrument sought to be reformed was signed. It is true that Milliken, the president of the petitioner in the court below, says that he was informed by the Commissioner that his application was accepted and his contract would be renewed. But he goes on to say that he then called on the chief of the stamp division, was informed by him that it had been decided that the application of any person who had a contract would be granted, and received blank copies of the contract to be executed, so that the acceptance was contemporaneous with the delivery of the instrument informing the petitioner of the terms. There is no room for the application of *Harvey* v. *United States,* 105 U. S. 671, and similar cases, upon which the petitioner relies. The only effect of the testimony is to confirm by the conduct and language of the parties the interpretation of the previous communications, which does not need that confirmation to be plain. It should not pass unmentioned that the communications were between the Commissioner and the firm, and therefore not even with the same person that brings the present suit.

In strictness it is not necessary to go further. For the parol testimony which we shall mention amounts to nothing, except upon the footing that there was a preliminary written agreement. But it is proper to add that it is doubtful, at least, whether the two letters bear the interpretation which the petitioner now puts upon them. It is plain that not all the paragraphs of the notice to contractors after the first were provisions to be added to future contracts. That which follows the one in question was on the face of it simply information as to what the applicants must do. The last paragraph, fixing the time within which applications would be received, also obviously was a self-protecting notice only; and although the petitioner does set it up as properly a term of the agreement, the averment is only by way of make-weight to what mainly is relied upon, and we hardly think that it needs discussion. The communication was a general form to instruct

and direct applicants for contracts. The most-natural meaning of the clause principally in question was simply to give notice that applications from persons not already engaged in imprinting stamps would not be considered and thereby to limit the applications sent in. It is not natural to read it as intended to contract the Government out of its right to employ new persons in case a need to do so should arise.

The petitioner's letter also in its most natural interpretation would confine the changes in the contract to the requirements concerning salaries and the rate of compensation. It is true that it contains the general words, "and in accordance with your official communication dated April 25, 1899," but it goes on to show what it regards as the elements of that communication material to the contract by the following words. It mentions salaries and the rate of compensation, nothing else. The words quoted are not an independent clause but they qualify the next phrase "we to pay salaries," etc. On these two letters, even if they had made a contract, which they did not, the Government hardly could have been held to the disputed terms. It may be mentioned further that Milliken testified that when he wrote that letter he did not consider the clause in question to relate directly to the subject matter of the contract, and although at a later date he stated that he desired to modify his testimony, the only intelligible modification, if it be called one, is that his testimony related to the time when he wrote the letter, not to the time when he received the contract to be signed.

After what we have said but a few words need be added with regard to the parol evidence offered. Milliken says that when he received the blanks he said to the chief of the stamp division that he presumed the only changes from the former contract were those contained in the letter of April 25, was answered, "That is all," and thereupon afterwards executed the contract without reading it. If this were undisputed and had come from anyone authorized to bind the Government, still, whatever effect, if any, it might have upon an undisclosed

insertion, it would afford no ground for complaint at an omission, especially an omission of the paragraph we have discussed. The answer was true in letter and spirit, and in no degree warranted the inference that the blanks contained the disputed clause. The petitioner executed those blanks without any ground whatever for assuming that they contained anything which they did not, even if Milliken had been right in what he says he supposed to be the import of the notice of April 25.

Finally, there is not a particle of evidence that the contract was not drawn just as the United States, through its representative, the Commissioner of Internal Revenue, intended that it should be, and for this reason again reformation must be denied. It is true that Milliken testifies that the Secretary of the Treasury admitted to him that the contract with the American Imprinting Company was in violation of the contract with the petitioner. But it is left doubtful, at least, whether the Secretary knew anything about what contract was intended to be made. The act of March 3, 1899, c. 424, 30 Stat. 1090, 1091, authorized the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to procure certain stamps by contract, to be awarded under such terms, restrictions, and regulations as might be prescribed by the former with the approval of the latter. But that it not sufficient to warrant an assumption that the Secretary gave directions or had knowledge as to the intended form of the contract. Moreover, so far as appears, the Secretary did not suggest or admit that there was any mistake in the form of the instrument. It would seem that Milliken exhibited to him the notice of April 25 as containing the Government's agreement, and that the Secretary fell in with Milliken's interpretation of the paper, but refused to do anything until the Commissioner of Internal Revenue returned. For all the reasons which we have stated, we are of opinion that the United States is entitled to a decree as matter of law.

*Decree reversed.*