**LYNN v. UNITED STATES et al.**
**No. 9278.**

Circuit Court of Appeals, Fifth Circuit.
March 26, 1940.

Paul Johnston and Gerry Cabaniss, both of Birmingham, Ala., for appellant.

William C. Fitts, Jr., General Counsel, Tennessee Valley Authority, of Knoxville, Tenn., Sidney J. Kaplan, Sp. Asst. to Atty. Gen., and Jim C. Smith, U. S. Atty., and

**588**

W. R. Bradford, Asst. U. S. Atty., both of Birmingham, Ala., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The petition of appellant was brought against the United States expressly under the Tucker Act, 24 Stats. 505, as amended 43 Stats. 972, 28 U.S.C.A. § 41(20); and against Tennessee Valley Authority which under the Act of its creation, 48 Stats. 58, 16 U.S.C.A. § 831, et seq., may sue and be sued. She prayed a judgment against the United States for the fair value of lands and easements belonging to her taken through raising the waters of the Tennessee River by Wheeler Dam, and for a declaratory judgment as to her rights under a deed she had previously made to the United States, and if necessary that the deed be reformed. Against Tennessee Valley Authority she prayed a money judgment for injuring her lands, and a declaration of her rights. Tennessee Valley Authority moved to dismiss the petition because it stated no claim against it. The United States moved to dismiss because no claim was stated against them, for want of jurisdiction under the Tucker Act, and for misjoinder of the Tennessee Valley Authority likely to cause confusion about a jury trial. The district court sustained both motions, and this appeal followed.

The facts must be taken from the petition. Prior to October 25, 1935, appellant owned a productive farm of 323 acres lying along the Tennessee River and nearly all river bottom land. That nearest the river was 8 to 10 feet higher than that more remote, and the latter was drained by two systems of ditches and drains, one of which led into a natural cave and through it to the river; the other led into a concrete box from which the accumulated water was taken by underground drains which emptied into the river above its usual surface level. The United States, through Tennessee Valley Authority and its agents, undertook to control floods and improve navigation by erecting Wheeler Dam across the river below the farm. Appellant's lands were surveyed, the maps showing her drains, and the intended lake levels were indicated. It was desired to acquire for the United States 104 acres of the land along the river, and appellant, on assurances that the lake would not interfere with the drainage of her other land, executed a deed to the United States covering the 104 acres, in fee simple with full warranty and with no mention of the drains. At the same time, however, on her insistence that her drainage rights be protected in writing, there was inserted in a license given her to occupy the 104 acres till flooded, following an agreement that she waived all right to claim damages to crops or the like because of backwater, headwater, or surrendering possession or otherwise, these words: "This provision being expressly limited to the land conveyed to the United States on this date." The license shows that the water was to be raised to the 556 foot level, and another exhibit shows that while the land sold off along the river had an elevation of 568 feet the reserved lands were elevated from 562 feet down to 558 feet. The petition alleges that the raised waters of the river now for long periods obstruct the outlets of the drains and impound and back up the surface waters on her lands causing the most of the land to remain boggy and swampy and incapable of profitable cultivation. It is alleged that she as a matter of law had an implied reserved easement to discharge her drains through and under the lands she deeded, the drains being open and obvious, and necessary to the enjoyment of her lands, and to obstruct them was not only a tort by the Tennessee Valley Authority but also a taking of her property for a public use by the United States for which she has a remedy under the Tucker Act.

Appellant contends that Rule of Civil Procedure 20, 28 U.S.C.A. following section 723c, authorizes the joinder of a claim against Tennessee Valley Authority with one against the United States under the Tucker Act. We think otherwise. The authority to make rules of procedure and to supersede inconsistent statutes given the Supreme Court by the Act of June 19, 1934, 28 U.S.C.A. §§ 723b, 723c, related only to actions at law and suits in equity. A proceeding under the Tucker Act is neither. In it only claims for money can be adjudicated. Reformation can be had of the contract on which the money claim arises, but not equitable relief as to land. Appellant's prayers for reformation of the deed and a declaratory judgment would have to be ignored. United States v. Jones, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90; United States v. Milliken Imprinting Co., 202 U.S. 168, 26 S.Ct. 572, 50 L.Ed. 980. The claim for money here asserted is at law rather than in equity, but the proceeding is not an action at law; a jury is not allowed, and is not de-

mandable under the Seventh Amendment. The Tucker Act waives sovereign immunity from suit in court in the classes of claims it specifies, on procedure and with reservations which it sets out. 28 U.S.C.A. §§ 761, 762, 763, 764. The proceeding is sui generis. It does not fall under the new rules of procedure any further than by Sect. 761, supra, it fell under the old ones. It is not to be embarrassed by joining other litigants who may be entitled to jury trial, and whose liability must necessarily depend on different principles.

But, in the spirit of Rule 21, the petition ought not to be dismissed for the misjoinder, but the claims ought to be separated for trial, with a repleader if deemed advisable. We shall consider each claim.

That against the United States can be only for money for a taking of property under the Constitution. The deed previously made cannot be reformed. The license provision above quoted says only that no liability is waived as to the land not conveyed; it creates none. But reformation is not needed, for we are of opinion that notwithstanding the deed which appellant made in fee simple with full warranty, there is implied a reserved easement to maintain and use the established drains which were open and obvious and necessary to the enjoyment of her land not conveyed, no other convenient way of draining them being in existence. Hamby v. Stepleton, 221 Ala. 536, 130 So. 76; Birmingham Trust & Savings Co. v. Mason, 222 Ala. 38, 130 So. 559. 17 Am.Jur., Easements, Sect. 75, 82.

An easement is property which when taken must be compensated, if in itself valuable. Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463; United States v. Welch, 217 U.S. 333, 30 S.Ct. 527, 54 L.Ed. 787, 28 L.R.A.,N.S., 385, 19 Ann.Cas. 680. But it does not follow that what has happened is a taking of which complaint may be made. Nothing has been done to appellant's drains except to raise the river to the 556 foot level. She knew that was to be done and that the land she sold and received $5,397 for was bought with that intent. She knew her reserved land was only from 2 to 6 feet higher. The assurance she says was given her that the drainage would not be destroyed was not made as a warranty. It is on its face a mere opinion. It is not set up as an intentional deceit. There has been no effort to rescind. If she expected no ill effects on her unsold land, equally the United States expected a clear right to raise the waters to the contemplated height.

But regardless of expectations on either side, has her easement or her land to which it is appurtenant been taken in the meaning of the Constitution? The drains under the conveyed lands are in themselves of no value apart from their service to the drained lands. The case is as though a natural stream or open ditch had led across the conveyed land. We understand that the United States in exercising their constitutional power over navigable streams may raise their level and thereby obstruct the drainage of surface waters on nearby lands, and although damage be thereby done for which a private person acting for himself would be liable as for a tort, the land is not taken under the Constitution unless the waters of the stream be backed upon the land. Persons acquiring and improving land adjacent to navigable waters do so subject to such results of the public right to improve and use the streams. The cases to this effect are cited and discussed in Franklin v. United States, 6 Cir., 101 F.2d 459. The dividing line between taking and merely damaging the land is illustrated by comparing United States v. Lynah, 188 U.S. 445, 23 S.Ct. 349, 47 L.Ed. 539, relied on by appellant, with Mills v. United States, D.C., 46 F. 738, 12 L.R.A. 673, therein cited as correctly decided and distinguished. In both cases similar rice plantations were affected by the same raising of the water level in the Savannah River done for improving its navigation. In Lynah's case it was found [188 U.S. 445, 23 S.Ct. 351, 47 L.Ed. 539]: "X. By the raising of the level of the Savannah river * * * the water thereof has been * * * caused to flow back upon and in this plantation * * * and has actually invaded said plantation, directly raising the water in said plantation about 18 inches, which it is impossible to remove from said plantation. This flooding is the permanent condition now, and the rice plantation is thereby practically destroyed for * * * rice culture or any other known agriculture, and is an irreclaimable bog and has no value." It was held to be thereby taken, and a claim under the Tucker Act was sustained. In the Mills case the plantation was not overflowed, though drainage was prevented by the raised river, but the plantation could be protected by raising its dykes and making drainage in another direction at a cost of $10,000, which was the sum asked for the

590

taking. It was held there was no taking, but only an unintended damage for which the Tucker Act afforded no remedy. In Jacobs v. United States, 5 Cir., 45 F.2d 34, there was an invasion by the raised waters, and also a statutory provision for paying for such damages as were involved. United States v. Cress & Kelly, 243 U.S. 316, 325, 37 S.Ct. 380, 61 L.Ed. 746, especially as respects the mill whose premises were not overflowed, but whose water power was drowned out, is difficult to distinguish; but we think it ought not to be taken as a precedent for Tucker Act relief for all the damages to all the lands near the river and the creeks, leading into it, which have been made wetter, but not overflowed at any time, by the raising of the water. The appellant alleges no overflow from the river, she does not claim all her land is made boggy, or that the affected land is not useful for any purpose, or that there is no way, by pumping or otherwise, to dry it. No taking is shown.

It must also be concluded that the Tennessee Valley Authority is not liable. In the erection of dams it is only an agency of the United States. The dams it builds belong to the United States and cannot be sold by it. 16 U.S.C.A. § 831c (h) (i) (k). What this agent does about them under the authority of the United States is justified if the United States could rightly have done it directly. The petition expressly alleges that what Tennessee Valley Authority has done in raising the river was "under the power and authority of the United States expressed in said Tennessee Valley Authority Act." The improvement of the river is not a tort which is unlawful, but an act which the United States had the right to do and had commanded this agent to do. It is not a question of liability to or immunity from suit, but of whether the thing done was lawful or unlawful. We think it was lawful, and since appellant's property was not taken the damage must be borne so far as relief in the courts is concerned.

Judgment affirmed.

HUTCHESON, Circuit Judge (concurring).

I agree with the result, and with most of what is said in the majority opinion. I do not agree with what is said, or at least implied in the opinion, that plaintiff had the same right to maintain and use the established drains in connection with the enjoyment of her land not conveyed, after she made her deed to the United States, that she had had before. I think it plain that this will not at all do. For, it makes a nullity of the purchase and leaves the United States and plaintiff, after it had paid and she had received, $5,000, as though nothing had been paid or received. I agree that she may still use the drains but this use is subject to the effect on them of the construction for the purpose of making which the land was sold. Any other view would be to permit her to have her cake and eat it too. I do not, therefore, agree with the majority opinion that United States v. Kelly, supra, is difficult to distinguish from this case, for there the mill owner had made no conveyance, while here, plaintiff had.

This is not to say that plaintiff's petition would state a cause of action for a taking as to the drainage easements she claims, if it showed that she had not made a deed. That question is not before us. It is to say that on the facts plaintiff pleads, including the making of her deed, no case of taking is made out.