Public lands; reservation of grazing rights pursuant to former section 8(d) of the Taylor Grazing Act; reformation of deed conveying land.—
Before Davis, Judge, Presiding, Nichols and Smith, Judges.
This case, alleging a breach of contract and/or a taking by the United States, is before the court on defendant’s motion for summary judgment. Defendant contends that there is no material fact at issue. We cannot agree. Defendant’s motion is denied and the case is remanded to the trial division for further proceedings.
For a period of time beginning before 1950 and ending on December 31, 1975, plaintiffs or their predecessor in interest grazed livestock on lands within the Saguaro National Monument, Arizona. In 1956 and 1961, following years of negotiations, the United States obtained title to certain lands within the Monument from the State of Arizona and from the University of Arizona through *575 exchanges for federally owned lands outside the Monument. For many years preceding the 1956 exchange and continuing to the time of said exchange, the state-owned lands were leased to plaintiffs’ predecessor in interest. Because of his leasehold, the state and the university were obligated to obtain his acceptance of the terms of the exchanges of the state-owned lands. To induce his acceptance, during the course of the negotiations leading to the exchanges, representations were made by officials of the National Park Service, which has administrative jurisdiction over the Saguaro National Monument, that it was, and would continue to be, the policy of the National Park Service to permit grazing on national monument lands so long as such use of the lands conformed with rules, regulations, and practices of the Forest Service, United States Department of Agriculture, as to lands under its jurisdiction held under grazing permits.
In October 1973 plaintiff Kenneth Kaecker was advised by the National Park Service that it had been concluded that continued grazing on national monument lands was incompatible with the purposes for which the Saguaro National Monument had been established and that, upon the expiration of plaintiffs then current grazing permit (on December 31, 1975), grazing on national monument lands covered by the permit would be terminated. No subsequent grazing on national monument lands has been authorized.
Plaintiffs claim that the termination of their grazing privileges on national monument lands constituted (1) a breach of the land-exchange agreement between the United States and the State of Arizona and/or (2) a taking of plaintiffs’ property by the United States for which plaintiffs are entitled to compensation. Plaintiffs’ claims stem from the assumption that, in the land-exchange agreement, the State of Arizona reserved, for the benefit of plaintiffs’ predecessor in interest and his successors, a right of use or easement entitling plaintiffs to graze in perpetuity their livestock on the lands which were conveyed to the United States. Plaintiffs assert that former section 8(d) of the Taylor Grazing Act authorized the making of such a reservation.[1]
*576 Defendant contends that the evidence is indisputable that the State of Arizona did not reserve the aforementioned right of use or easement. Defendant points out that the deeds which the State of Arizona and the University of Arizona executed to the United States contained no language of reservation. In the absence of such language, defendant argues, "the cited provision of the Taylor Grazing Act has no application.”
Former section 8(d) of the Taylor Grazing Act provided, in relevant part, that "either party to an exchange * * * under this section may make reservations of minerals, easements, or rights of use.” Except with respect to mineral rights, nowhere in section 8(d) was it stated that a reservation must be made by way of express language contained in a deed conveying the land to be exchanged. Nowhere in the congressional committee reports[2] discussing the Taylor Grazing Act and subsequent amendments thereof was there any indication that Congress intended to require that a reservation of rights not involving minerals be made by means of express language in a deed of conveyance. Because the literal language of section 8(d) did not impose such a requirement and because the committee reports pertaining to the Taylor Grazing Act were silent as to this question, we refuse to import such a requirement into the section. We hold that, under former section 8(d), the intention of a party to make a reservation of rights not involving minerals was the determinative factor, not the precise form in which the party effectuated its intention.
As long as a party to a land exchange intended to make a reservation of rights not involving minerals and as long as the making of such a reservation was evidenced by a written instrument signed by the party receiving title to the land which was to be subject to the reservation, we shall exercise our equitable power, where the conveying party omitted inadvertently to include the reservation in the deed of conveyance, to reform the deed so as to include therein the reservation.[3] In a case where we make such a *577 reformation, we shall regard the reservation as binding between the parties to the exchange and their intended third-party beneficiaries. At the very least, the reservation imposed an equitable servitude on the land conveyed.
It is clear from the record that plaintiffs’ predecessor in interest possessed rights which derived from the State of Arizona and its university, of such a level as to compel that they be taken into account in transferring the land to the United States; yet the record does not reveal fully why this was so. Also, from the record, we are unable to ascertain whether the State of Arizona reserved, in its land-exchange agreement with the United States, a right of use which would entitle plaintiffs to graze their livestock in perpetuity on the land conveyed by the state to the United States;[4] and we are unable to ascertain whether such a reservation, if made, was evidenced by a written instrument signed by an agent of the United States who was authorized to effect land exchanges under the Taylor Grazing Act. Thus material facts remain at issue in the case and defendant has not met its burden with respect to its motion for summary judgment.
it is therefore ordered, upon consideration of the parties’ submissions, and without oral argument, that defendant’s motion for summary judgment is denied, and the case is remanded to the trial division for further proceedings.

 Taylor Grazing Act, ch. 865, § 8(d), 48 Stat. 1272 (1934), as amended, ch, 842, tit. I, § 3, 49 Stat. 1976 (1936), as amended, ch. 548, § 1, 62 Stat. 533 (1948) (repealed 1976). Former section 8(d) was codified as 43 U.S.C. 315g(d) (1970).

 H. R. REP. NO. 903, 73d Cong., 2d Sess. (1934); S. REP. NO. 1182, 73d Cong., 2d Sess. (1934); H.R. REP. NO. 2050, 73d Cong., 2d Sess. (1934); H.R. REP. NO. 2125, 74th Cong., 2d Sess. (1936); S. REP. NO. 2371, 74th Cong., 2d Sess. (1936); H. R. REP. NO. 1864, 80th Cong., 2d Sess. (1948); S. REP. NO. 1497, 80th Cong., 2d Sess. (1948).

 That we have the equitable power to reform an instrument where such reformation is a necessary incident to an action for money damages was confirmed long ago by the United States Supreme Court in United States v. Milliken Imprinting Co., 202 U.S. 168 (1906).

 There is substantial evidence in the record that, if an agreement pertaining to grazing was made between the State of Arizona and the United States, such agreement covered only Saguaro Monument land already owned by the United States at the time of the land exchanges; however, the record is inconclusive on this point.