**Helen PASSARO, Individually and as Executrix of the Estate of Ramon Passaro,**

v.

**The UNITED STATES.**

No. 669–81 C.

United States Claims Court.

Jan. 26, 1984.

Robert T. Seiwell, Media, Pa., for plaintiff.

Richard F. Silber, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, for defendant; Major Thomas G. Bowe, of the Dept. of the Army, Washington, D.C., of counsel.

## OPINION

SETO, Judge:

This military pay case is before the court on cross motions for summary judgment. Plaintiff petitions this court to find that the Survivor Benefit Plan (SBP), 10 U.S.C. §§ 1447–1455 (1976 & Supps.), entitles her to an annuity, despite her deceased husband's election *not* to participate in the SBP. Plaintiff contends that § 1448(a) of the SBP requires the Army to have notified her when her husband made his non-election, and that the Army's failure to have given her such notice entitles her to benefits under the SBP.

For the reasons stated below, this court holds that plaintiff was entitled to notification of her husband's election under § 1448(a). Whether failure to comply with that section requires the Government to extend benefits to plaintiff under the SBP must be decided on the evidence to be adduced at trial. For the reasons set forth below, defendant's Motion for Summary Judgment is therefore denied, and plaintiff's Cross-Motion for Summary Judgment is denied in part and granted in part.

## FACTS

On September 21, 1972, Congress enacted the Survivor Benefit Plan to establish a system of survivor benefits for the survivors of military retirees. *S.Rep.* No. 1809, 92d Cong., 2d Sess. 1, *reprinted in* [1972] U.S.Code Cong. & Ad.News 3288, 3289. Congress intended the SBP eventually to replace the self-financed Retired Serviceman's Family Protection Plan (RSFPP), 10 U.S.C. §§ 1431–1446, which, since its inception in 1953, proved inefficient because of increased expense and diminished participation. Among the SBP's provisions, Congress granted pre-SBP retirees the right to participate in the plan. 10 U.S.C. § 1455.

Major Ramon Passaro married the plaintiff, Helen Passaro, on October 17, 1958. He served on active duty in the United States Army for 20 years, 1 month and 15 days until his retirement on November 1, 1968. Major Passaro elected not to participate in the RSFPP, choosing instead to receive full retirement pay.

Following the SBP's enactment in 1972, the Department of the Army mailed all retired service members a bulletin which generally described the SBP. *Retired Army Bulletin,* DA Pamphlet 600–1 (October, 1972). In November 1972, the Army mailed all retirees a letter which further explained the SBP and the benefits available thereunder. The letter also included a form which would enable a retiree to elect to participate or refrain from participating in the SBP. Several months after this mailing, Major Passaro received at his address a postal card marked "Final Notice" which, again, would have allowed him to elect to participate in the SBP and, if he did not, would have provided a record establishing his decision *not* to participate in the plan. Major Passaro elected *not* to participate in the SBP. He checked a box indicating his intention, signed the postal card, and dated it September 4, 1973. Major Passaro died on November 10, 1976.

Four years later, plaintiff wrote to the Army's Finance and Accounting Center, inquiring about survivor benefits. The Army informed her that her husband had elected to receive his full retirement pay rather than provide her a survivor's annuity through reduced retirement pay. Plaintiff thereafter filed her petition (now Complaint) with this court.

## DISCUSSION

The SBP protects survivors of military personnel by automatically enrolling all retiring military personnel in the SBP.

The predecessor plan to the SBP was the Retired Serviceman's Family Protection Plan. The RSFPP provided an annuity for the survivors of retired military personnel and was funded in part by amounts deducted from the retiree's retired or retainer pay. The old RSFPP required an affirmative election into the plan, i.e., participation was not automatic. The new SBP plan, on the other hand, provides a similar benefits package, but uses a revised procedure; to wit, a retiree is an automatic participant in the SBP unless he affirmatively elects out of the plan. The new procedure under the SBP provides further that in those cases where a married person decides to participate at less than the maximum level, or not to participate at all, such person's spouse *must* be notified of that decision. Section 1448, as codified, states in pertinent part:

> (a) * * * *
>
> (2) The Plan applies—
>
> (A) to a person ... who is married or has a dependent child when he becomes entitled to retired or retainer pay, unless he elects *not* to participate in the Plan before the first day for which he is eligible for that pay ....
>
> \* \* \* \* \* \*
>
> (3)(A) *If a person ... who is married elects not to participate in the Plan at the maximum level ... that person's spouse shall be notified of that election.* [Emphasis supplied.]

Only 15% of those retiring before enactment of the SBP participated in the RSFPP. In order to increase participation in the new SBP, Congress extended an option to elect into the SBP to those who retired before the SBP's enactment. This option is provided by section 3(b) of the Congressional act creating the SBP. Armed Forces Survivor Benefit Act, Pub.L. 92–425, 86 Stat. 706 *et seq.* (1972) (codified at 10 U.S.C. §§ 1447–1455) (the "Act"). Section 3(b) is the only section directed exclusively to pre-SBP retirees, and states:

> Any person who is entitled to retired or retainer pay on the effective date of this Act may elect to participate in the Survivor Benefit Plan established pursuant to clause (3) of the first section of this

Act before the first anniversary of that date.[1]

The language of section 3(b) does *not* expressly include or exclude a spousal notice provision; therefore, determining whether spousal notice is mandated for section 3(b) elections requires construing the SBP statute and ascertaining Congress' intent. The issues this court must address are, therefore: first, whether Congress intended the spousal notice provision to apply to *all* retirees and, second, if such intent is found, whether the Government's omissive violation of the notice provision mandates a retroactive election of plaintiff's deceased husband into the SBP.

Non-contractual actions, such as the case at bar, over which this court has jurisdiction generally fall into two categories subsumed under the Tucker Act, 28 U.S.C. § 1491: (1) claims in which the plaintiff has paid money to the Government and seeks its return, or (2) claims in which plaintiff asserts an entitlement to money from the United States. *Eastport S.S. Co. v. United States*, 178 Ct.Cl. 599, 605, 372 F.2d 1002 (1967). Plaintiff is not seeking the return of money, but asserts an entitlement to money. In providing entitlement to a monetary claim, plaintiff must indicate "the particular provision of law relied upon [that] grants [her], expressly or by implication, a right to be paid a certain sum." *Eastport*, 178 Ct.Cl. at 605, 372 F.2d 1002.

■ Defendant asserts that the Supreme Court in *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), defined this court's jurisdictional limits by requiring plaintiff to rely on a statute that *expressly* creates a cause of action for compensation or damages. By this narrow

reading of *Testan*, however, defendant misconstrues this court's jurisdictional boundaries. The Court in *Testan* upheld the established principle that under 28 U.S.C. § 1491, the plaintiff's "asserted entitlement to money damages depends upon whether any Federal statute 'can be *fairly interpreted* as mandating compensation by the Federal Government for the damage sustained.'" *Testan*, 424 U.S. at 400, 96 S.Ct. at 954 *citing Eastport*, 178 Ct.Cl. at 607, 372 F.2d 1002; and *Mosca v. United States*, 189 Ct.Cl. 283, 290, 417 F.2d 1382 (1969), *cert. denied*, 399 U.S. 911, 90 S.Ct. 2197, 26 L.Ed.2d 565 (1970). [Emphasis supplied.]

■ Furthermore, the Supreme Court has decided a line of cases presenting situations in which Congress had created private rights, but neglected to expressly authorize the enforcement of those rights in the federal courts. *See, e.g., Jackson Transit Authority v. Local 1285, Amalgamated Transit Union*, 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982); *California v. Sierra Club*, 451 U.S. 287, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981); *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979); *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).[2] The crucial factor in deciding whether a right of action may be inferred from a certain statute is whether Congress intended to create one. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–89, 61 L.Ed.2d 82 (1979); *Nat'l R. Passenger Corp. v. Nat'l Assn. of R. Passengers*, 414 U.S. 453, 458, 460, 94 S.Ct. 690, 693, 694, 38 L.Ed.2d 646 (1974); *Connolly v. United States*, 1 Cl.Ct. 312, 554 F.Supp. 1250 (1982).

---

1. Congress later amended section 3(b) to extend this period from twelve to eighteen months. Pub.L. 93–155, 87 Stat. 613, No. 804.

2. The significance of *Cort v. Ash* has been stated in *Connelly v. United States*, 1 Cl.Ct. 312, 554 F.Supp. 1250, *rev'd in part on other grounds*, 716 F.2d 882 (Fed.Cir.1983), as follows:

   The *Cort v. Ash* line of cases points out the subtle but important distinction between Congressional intent to create a substantive entitlement and the intent to create a right to

enforce that entitlement by suit in a federal court.... In determining whether suit may be brought under 28 U.S.C. § 1491, the court must therefore be careful to determine not only whether Congress intended that the plaintiff be the beneficiary of an entitlement, but also whether it intended that he be able to enforce such entitlement by suit for money damages in this court. *See United States v. Testan*, 424 U.S. at 400–02, 96 S.Ct. at 954–955. [*Connolly*, 1 Cl.Ct. at 316 n. 5, 554 F.Supp. at 1254 n. 5.]

In *Barber v. United States,* 230 Ct.Cl. 287 (1982), the United States Court of Claims decided that Congress intended to create a substantive right to spousal notice when a retiree elects *not* to participate in the SBP. The court in *Barber* found the notice requirement in section 1448(a) to be "inextricably related to a serviceman's option to withdraw from plan coverage," *Id.* at 292, and that Congress intended the notice provision "to safeguard the rights of . . . [a retiree's] spouse." *Id.* at 298. Although all statutory violations do not give rise to monetary relief, *Testan,* 424 U.S. at 401, 96 S.Ct. at 954, the Court of Claims found that "a violation of section 1448(a) can be fairly said to give rise to a claim for money damages." *Barber,* 230 Ct.Cl. at 291.

The facts in *Barber,* however, differ somewhat from those in the case at bar. In *Barber,* the plaintiff's husband retired *after* the SBP's enactment, and thus was an automatic participant in the plan. The Court of Claims found his attempt to elect *out* of the plan ineffectual until the Government met its obligation to notify the retiree's spouse. *Barber,* 230 Ct.Cl. at 298. Therefore, because the Government did not meet that obligation, the retiree *remained* an automatic participant and his spouse remained automatically entitled to SBP benefits.

■ However, as a pre-SBP retiree, plaintiff's husband in the case at bar must have elected *into* the plan in order for his spouse to become a beneficiary thereunder. If this court determines that her husband's election *not* to participate in the SBP was ineffectual, plaintiff would still *not* be entitled automatically to SBP benefits.[3] Only an affirmative retroactive election of plaintiff's husband into the plan will give plaintiff a legal entitlement to SBP benefits.

■ Nevertheless, because this court has the power to employ equity procedures incidentally to granting monetary relief, *Pauley Petroleum v. United States,* 219 Ct.Cl. 24, 591 F.2d 1308 (1966), plaintiff's claim in the case at bar does not conflict with this court's jurisdiction.[4] This court has undertaken similar actions by ordering retroactive employment status in a position never held by a party for the purpose of awarding back pay, *Chambers v. United States,* 196 Ct.Cl. 186, 451 F.2d 1045 (1971), and by reforming a deed or contract as a basis for awarding monetary relief. *MacNamara Constr. of Manitoba v. United States,* 206 Ct.Cl. 1, 4–5, 509 F.2d 1166 (1975); *Iowa-Wisconsin Bridge Co. v. United States,* 114 Ct.Cl. 464, 465, 504, 84 F.Supp. 852 (1949), *cert. denied,* 339 U.S. 982, 70 S.Ct. 1020, 94 L.Ed. 1386 (1950); *see also United States v. Milliken Imprinting Co.,* 202 U.S. 168, 173–4, 26 S.Ct. 572, 573, 50 L.Ed. 980 (1906).

The assumption that this court has no equity jurisdiction is an "ancient but inaccurate shibboleth." *Quinault Attolle Ass'n v. United States,* 197 Ct.Cl. 134, 137–38 & n. 1, 453 F.2d 1272 (1972). Although it cannot grant specific equitable relief, *Quinault,* 219 Ct.Cl. at 137–38 & n. 1, 453 F.2d 1272, this court is empowered to employ equitable doctrines "incidentally to [its] general monetary jurisdiction, either as equitable procedures to arrive at a money judgment . . . or as substantive principles on which to base the award of a money judgment." *Pauley Petroleum,* 219 Ct.Cl. at 38, 591 F.2d 1308; *see also Klamath & Modoc Tribes v. United States,* 174 Ct.Cl. 483, 488, 490 (1966). Thus, following the Court of Claims' decision in *Barber* and the established principles governing the United States Claims Court's jurisdiction, this court finds plaintiff's claim properly before it.

3. Voiding plaintiff's *non*-election into the SBP would still leave plaintiff's wife as she originally was, i.e., outside of the Survivor Benefit Plan. Therefore, unlike *Barber,* voiding the plaintiff's non-election alone would not resolve the asserted inequity.

4. *Pauley Petroleum,* 219 Ct.Cl. 24, 591 F.2d 1308, and its progeny are *binding precedent* upon this court, and empower this court to

grant equitable relief incident to the granting of monetary relief. This court will continue to follow *Pauley Petroleum,* with full force and effect, unless and until modified by decisions of the United States Court of Appeals for the Federal Circuit or the United States Supreme Court. General Order No. 1, United States Claims Court (October 7, 1982) [KOZINSKI, C.J.].

The next consideration is whether Congress intended the notice provision in section 1448(a) to apply to spouses of pre-SBP retirees. Defendant argues that because section 1448 of title 10, which sets forth the notice provision in the SBP, refers only to those retiring after the Act's effective date, Congress precluded the notice provision's application under section 3 of the Act which provides the right of pre-SBP retirees to elect into the SBP. Defendant's characterization of the Act is unwarranted.

■ This court recognizes that Congress passed the statute not in sections or parts, but as a complete package, "animated by one general purpose;" therefore, "each part or section should be construed in connection with every other part or section so as to produce a harmonious whole." 2 C. Sutherland, *Statutory Construction* § 46.05 (4th ed. 1972); *see Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *Ass'n of Westinghouse Salaried Employees v. Westinghouse Elec. Corp.*, 348 U.S. 437, 443–44, 75 S.Ct. 489, 491–92, 99 L.Ed. 510 (1955); *Barber*, 230 Ct.Cl. at 293; *United States v. Calif. Portland Cement Co.*, 413 F.2d 161 (9th Cir.1969).

In order to construe "each part or section" harmoniously "with every other part or section", it is incumbent upon this court to first analyze the entire Act as passed by Congress. The Act was passed with six sections, of which sections 2, 5, and 6 provide merely for renaming parts of the RSFPP and integrating the new Act into other titles. Section 4 deals with certain persons eligible for pensions under subchapter III of chapter 15 of title 38 of the United States Code or under the Veterans' Pension Act of 1959. The sections here germane are sections 1 and 3. Section 1 contains three clauses: clause "(1)" provides for changing the then applicable name of chapter 73 of title 10; clause "(2)" provides for changes in sections correlative to the new additions; and clause "(3)" enacts the substance of the SBP via 10 U.S.C.

§§ 1447–1455. Section 3 has subparts (a)–(f): "(f)" ensures that provisions relating to mental incompetency (§ 1449), recovery of erroneously paid funds (§ 1453), and administrative deficiency corrections (§ 1454) are applied to section 3; "(e)" determines the effective date of a valid election; "(d)" defines the term "base amount" and is essentially the same as the definition in § 1447(2) of clause "(1)", with slight changes made to reflect the fact that § 1447(2) applies to automatic participants, while section 3(d) applies to persons electing into the SBP; and "(c)" makes it clear that persons participating in the RSFPP may elect to remain in that plan.

The remaining two subparts of section 3 of the Act, when considered exclusively within the four corners of the Act, are logically included for the purpose of "tying up loose ends" created by the phasing in of the SBP and the concomitant phasing out of the RSFPP. Each subpart concerns a different class of servicemen and the options granted to each class. These subparts complete entirely the list of classes of servicemen to which the Act applies.

Section 1448 of the SBP concerns the other classes: § 1448(a) is the class consisting of service personnel not yet entitled to retirement or retainer pay when the Act was to take effect; "(b)" makes the SBP applicable to single personnel without dependents; "(c)" speaks to persons on the temporary disability retired list; and "(d)" refers to a person who dies while on active duty. The element common to each of these classes is that everyone included was not yet, at the effective date of the Act, entitled to retired or retainer pay.

Subpart "(a)" of section 3 applies to those persons becoming eligible for retired or retainer pay on, or within 180 days after, the effective date of the Act. It reflects the phasing out of the RSFPP by cancelling any retirement pay options made prior to the Act under the RSFPP and mandating an election under SBP guidelines.[5]

---

**5.** It should be noted that section 3(a)(1) and (a)(2) parallel the procedural aspects of § 1448(a) and (b) in section 1, in that a person

having a spouse and/or dependents is automatically within the SBP unless he affirmatively elects not to participate, while a single person

The "phasing-out" provisions of subpart "(a)" of section 3 of the Act and the "phasing-in" provisions of § 1448 of section 1 of the Act leave for consideration only one class—those persons who had become entitled to retirement or retainer pay more than 180 days before the Act's effective date, including both those who had and those who had not been participants in the RSFPP. Subpart "(b)" allows one: (i) not participating in the RSFPP to affirmatively elect to participate in the SBP; or (ii) participating in the RSFPP to elect into the SBP and either (A) continue, within limits, to contribute to RSFPP funds, or (B) terminate participation in the RSFPP.

The effect, then, of subparts "(a)" and "(b)" of section 3 is to ensure that all service personnel are, or are permitted to be, assimilated into the SBP. The options for elections in the two subparts, were provided for a limited time (360 days in the case of subpart "(a)" and eighteen months in the case of subpart "(b)"). After the designated time periods, the subparts would no longer be effective, nor would they need to be effective, since everyone on active duty would have come within one of the classes in § 1448 or would have already made an allowed election. It is entirely reasonable to assume that subparts "(a)" and "(b)" of section 3 were not included in section 1 simply because, after a certain time, these provisions would constitute mere statutory nullities, and as such, could be excluded from the codified portion of the Act constituting the SBP, thereby avoiding excess verbage in the SBP's provisions.

This does not mean, however, that the provisions in 3(a) and 3(b) have nothing to do with the SBP itself. Obviously, those parts must have substance; that substance must be found in section 1 of the Act.

The express language of section 3(b) states that a person validly electing *into* the SBP "may elect to participate in the [SBP] established pursuant to clause (3) of the first section of this Act. . . ." To construe the Act as "a harmonious whole" would logically require reading section 1 exactly

as written with a single change, *viz.,* changing the word "becomes" in § 1448(a) and (b) to "is" or, perhaps, "has been." No other change is necessary to effectuate section 3(b)'s mandate.

◼ The strict and detailed analysis just outlined, using only the very language of the Act, yields a construction which mandates spousal notice whenever a person in the class named in section 3(b) makes an election not to participate in the SBP. It is an ineluctable denouement that section 3(b) cannot be considered in a vacuum, or it would be meaningless, having no substantive provisions.

That this interpretation is correct is further buttressed by the direct reference to § 1448(a) in the last sentence of section 3(b). The logical inference to be deduced from the language and structure of the Act is that "(a)" and "(b)" of section 3 are not qualifying or merely supplementing provisions, but are instead integrating provisions bringing pre-SBP retirees within the Act's coverage. The court in *Barber* found, and this court agrees therewith, that § 1448 creates a substantive right. *Barber,* 230 Ct.Cl. at 292. The section cannot, therefore, be excluded from consideration through any process of selective incorporation. Section 3(b) incorporates all of clause (3) of section 1, not merely some perceived minimum necessary to implement a survivor annuity.

Moreover, statutory analysis, however closely reasoned, is not the only underpinning for this court's holding. An overview of the SBP's legislative history reveals that Congress intended an interrelationship between section 1448(a) of title 10 and section 3(b) of the Act. The general purpose of the SBP was to:

(1) Establish a *new system* of survivor benefits *for survivors of present* and future military retirees and active duty members who are retirement eligible; [and]

(2) Provide a program guaranteeing a minimum annual income of $2,100 per

without dependents must, if so desiring, affirm-

atively elect into the SBP.

year to current widows of military retirees. [*S.Rep.* No. 1089, 92d Cong., 2d Sess. 1, *reprinted in* [1972] U.S.Code Cong. & Ad.News 3288, 3289.] (Emphasis added.)

Congress included the notice provision in the SBP as an attempt to prevent the occurrence of widows learning after their spouse's death that their spouses had neglected to provide adequate support for them:

[T]he Committee is concerned that in a relatively few cases survivors may unknowingly be left in a situation of great hardship because a retiree, for one reason or another, did not join the program or otherwise provide an adequate annuity for his dependents.

It is the intention of the Committee, therefore, that regulations designed to carry out this provision of the bill provide for counseling by competent officers for those about to retire who elect not to participate or elect to participate at less than the maximum level. *It is further the intention of the Committee that the spouse of the member concerned will be present at the counseling session if possible or provided separate counseling as necessary to be made fully aware of the options available and the election made by her husband.* It is the intention of the Committee that in satisfaction of this requirement counseling officers shall certify, *in the event the retiree elects not to participate or to participate at less than the maximum level, that counseling has been provided and shall present the spouse with a statement that specifies she has been counseled and indicates the counseling officer's satisfaction that she fully understands the implications of her husband's election.* The spouse should be invited to sign the statement indicating she has been counseled and understands the decision. The counseling officer should stand ready to provide any further information that the retiree or the spouse may require.

This new survivor annuity program makes a significant addition to the estate of the military retiree, and the *Committee does not want a benefit of this magnitude lost to an individual service family through lack of awareness. It therefore wishes responsibility clearly placed on administrative officers to see that full counseling has been provided as to the effect on survivors of an election not to participate or to participate at a reduced level.*

The rights in retirement pay accrue to the retiree and ultimately, the decision is his as to whether or not to leave part of that retirement pay as an annuity to his survivors. However, *the Committee wants every effort made to be sure that the advantage is not lost through neglect or lack of understanding and that the spouse fully understands the election may profoundly affect her future welfare.* [*Barber v. United States,* 230 Ct.Cl. 287, 296 (1982) (quoting *H.R.Rep.* No. 481, 92d Cong., 1st Sess. 8–9 (1972))].[6] [Emphasis supplied.]

Thus, it is manifestly clear that Congress intended to ensure that spouses of present and future retirees would not bear the economic hardship experienced by widows under the RSFPP and, coincidentally, to abate existing financial problems among RSFPP widows. More important to the case at bar, however, is that Congress also intended to ensure that spouses of *both* pre-SBP and future retirees were treated *equally* under the plan. This concern is reflected not only in the Senate Committee statements, *supra,* but also in explicit statements evincing Congress' intent that the rules relating to participation for present and future retirees be interpreted consistently:

The provisions in [the SBP] which allow current retirees to obtain coverage under the proposed plan have been clarified to assure that the rules for their participation are consistent with the rules for participation established for the future retirees. Again, the committee believed that this was the intent of S. 3905

---

6. The counseling provision that the Senate Committee referred to in the statement above

is required by Air Force Regulation 211–24, 717 (June 5, 1975).

when it was originally written. These provisions clearly insure the attainment of that intent. [*S.Rep.* No. 1089, 92d Cong., 2d Sess. 29, *reprinted in* [1972] U.S.Code Cong. & Ad.News 3288, 3304; *see id.* at 66, [1972] U.S.Code Cong. & Ad.News at 3328.]

Remarks from the bill's sponsors also support plaintiff's contention that Congress intended the notice requirement to benefit all retirees and their spouses. In describing the rights and protections afforded under the bill to pre-SBP retirees and their spouses, Representative Legget stated:

All present retirees will have the option of joining the new program, remaining in the old program [the RSFPP], or participating in both, provided that they do not create a combined annuity that exceeds their full retired pay.

\* \* \* \* \* \*

*A retiree may elect not to participate, but if he does so, his spouse will be notified of the fact by the Government.* [117 *Cong.Rec.* 37202 (1971)]. [Emphasis supplied.]

In reference to another section in the House version of the bill, Representative Gubser, the bill's chief sponsor, emphasized the importance of avoiding discrimination against retired personnel:

I merely say that we should not discriminate; we should make it apply to all persons whether on active duty *or retired* . . . . [117 *Cong.Rec.* 37199 (1971)]. [Emphasis supplied.]

Defendant is unable to cite any specific language in the legislative history evincing an intent by Congress to distinguish among the rights afforded to both pre-SBP and future retirees and their spouses. Furthermore, Congress emphasized repeatedly the cardinal importance of protecting the survivor interests of widows through the notification provision.[7] The Court of Claims also stressed that an election not to participate in the plan had to be made with the

spouse "fully aware of the [decision's] implications", so that "both parties [had] the opportunity to discuss and reconsider together the decision." *Barber,* 230 Ct.Cl. at 297–298; *see H.R.Rep.* No. 92–481, 92d Cong., 1st Sess. 9 (1972).

## CONCLUSION

In view of the importance attached by the Court of Claims and by Congress to the rights granted under the SBP to spouses of military retirees, this court is constrained to find that Congress did not intend to create such a gross disparity between pre-SBP retirees and future retirees by denying spouses of the former the right to be notified of the consequences surrounding a decision that would affect their welfare so adversely, while mandating that the latter must be so notified. Therefore, this court finds that section 3(b) of the SBP incorporates the notice provision section 1448(a) of title 10, and, following the opinion in *Barber,* that a retiree's election not to participate in the SBP has no effect until the government fulfills its ministerial duty to notify the retiree's spouse.

■ Furthermore, because individuals should not suffer for the dereliction of public officers, this court finds that, in a proper case, it may apply equitable procedures to retroactively elect a pre-SBP retiree into the plan in order to award his widow monetary compensation. Whether the case at bar presents such inequities as to require the court to exercise these procedures must be determined from the evidence adduced at trial.

Accordingly, defendant's Motion for Summary Judgment is DENIED. Plaintiff's Cross-Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, in accordance with this Order.

IT IS SO ORDERED.

---

7. *See H.R.Rep. No.* 92–481, 92d Cong., 1st Sess. 8–9 (1972); 117 Cong.Rec. 37194 (1971) (remarks of Rep. Pike); 37197 (remarks of Rep. Hicks); 37200 (remarks of Rep. Clausen); 37201 (remarks of Rep. Whitehurst); 3720 (remarks of Rep. Young); 37207 (remarks of Rep. White).